# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPTUM, INC. and<br>OPTUM SERVICES, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID WILLIAM SMITH,<br><br>*Defendant*. | Civil Action No.: 19-cv-10101 |

## AFFIDAVIT OF JOHN C. STODDARD

I, John C. ("Jack") Stoddard, hereby state under penalty of perjury as follows:

1. My name is John C. ("Jack") Stoddard, and the matters set forth herein are based on my personal knowledge.

2. I have over 20 years of health care technology and services experience, having worked at companies such as The Advisory Board (acquired by Optum after my tenure), Health Dialog, and Accolade.

3. From 2005 to 2009, I worked for UnitedHealth Group, Inc. ("UHG") in different positions, including as a Senior Vice President, Optum International, and as Senior Vice President, Employer Solutions at Optum.

4. I currently serve as the Chief Operating Officer of TCORP62018 LLC ("ABC"), which is a health care venture established by Amazon, Berkshire Hathaway, and JPMorgan Chase & Co. (the "Founders").

**Products and Services of ABC and Optum**

5. Based on my general knowledge of the health care industry, publicly available

information, the Founders, and my positions at UHG and ABC, I am familiar with the products and services offered by ABC as well as Optum, Inc. and Optum Services, Inc. ("Optum").

6. Optum offers a range of services, including things like advisory services, data analytics (OptumInsight), health care delivery, health care operations, health plan resources, pharmacy care services (OptumRx), and population health management. Optum offers these in the form of health care products and services to entities like private employers, state and federal governments, and health care providers.

7. Optum's products and services include, for example, selling Pharmacy Benefit Management Services (PBM), selling direct primary and specialty care, selling access to and claims processing for specialty clinical networks (e.g., behavioral health, transplant, etc.), and selling revenue-cycle management services and software to hospitals.

8. Optum is a subsidiary of UHG, which is a for-profit public company.

9. In January 2018, the Founders announced that they would form an independent entity—*i.e.,* ABC—with the goal of providing better health outcomes, increased patient satisfaction, and lower costs for the Founders' own employees and their families.

10. ABC does not sell or offer any products or services to the general market. Instead, ABC is evaluating potential health care solutions for the Founders' over 1.2 million employees that lead to better outcomes, higher satisfaction, and more affordable care.

11. ABC is seeking to evaluate, test, and scale solutions provided by third-party vendors—which could potentially include Optum—who are willing to innovate and experiment with ABC. ABC is currently using data, analytics, and expertise to combine products from third-party vendors—which could potentially include Optum—to come up with new ways of unlocking value for the Founders and their employees. This is not a service that Optum provides to the

Founders.

12. If viable offerings or solutions do not exist in the market, ABC may consider building new solutions to meet the needs of the Founders' employees or consider having third-party vendors develop them.

13. ABC is not profit-seeking or returning profits or dividends to the Founders, and even in serving the employees of the Founders, it is not charging for its work.

14. ABC has no activities, products, or services that compete with any Optum activities, products, or services.

**David Smith**

15. I interviewed David Smith ("Smith") for a position at ABC on October 29, 2018.

16. After interviewing Smith, I was inclined to advance him in our hiring process at ABC due to his broad understanding of the health care economy, his analytic skillset, and his consulting background.

17. ABC has recently hired a number of people with similar backgrounds to Smith—*i.e.*, consulting backgrounds with a general understanding of the health care industry—irrespective of the companies they might have worked for previously.

18. Smith has never discussed or disclosed to me in any form of communication any Optum strategy, business plan, trade secret, or any other confidential information, nor have I ever sought such information from Smith.

19. Smith began working at ABC on January 17, 2019, in the position of Director, Strategy and Research. Smith's original title was "Director, Product Strategy and Research," but the "Product" portion of his title—and similar titles of his colleagues in the Strategy and Research group—was dropped because this group is not responsible for the product management function.

20. In this role, Smith will be evaluating third-party vendors and recommending ways for how ABC can unlock value for the Founders and their employees. Smith's role at ABC is also to use his general skillset to evaluate complex health care problems, analyze and test potential health care solutions, and handle ad hoc research requests from senior leaders all for the benefit of the Founders' employees. ABC plans to restrict Smith from evaluating Optum or UHG products in 2019.

21. Smith is not on the senior leadership team at ABC.

22. At ABC, Smith will not be working on any health care products that he might have been involved with at Optum. Out of an abundance of caution, Smith will not assist in any analysis of any Optum or UHG products or services (either separately or in comparison to any other company's products or services).

23. ABC has established precautions regarding Smith's potential disclosure of any of Optum's information he may still retain in his head.

24. As a condition of his employment, ABC required Smith to sign an Employee Confidentiality, Assignment and Non-Solicitation Agreement that states, among other things, that he will not disclose to ABC nor induce ABC to use any confidential information belonging to any previous employer. *See* Exhibit 1.

25. ABC also required Smith to sign an Acknowledgement on his first day of work stating that he has not retained any documents belonging to a prior employer, will not use or disclose any confidential information belonging to a prior employer, and will immediately contact Erica Davila (ABC's Acting General Counsel) if he has any concerns about those issues. *See* Exhibit 2.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
John C. Stoddard

_____
Date 1/22/19

5

# EXHIBIT 1

TCorp62018 LLC

Employee Confidentiality, Assignment and Non-Solicitation Agreement

In consideration and as a condition of the commencement of my employment by **TCorp62018 LLC** (including its subsidiaries and other affiliates and its and their successors and assigns, the "Company"), I agree as follows:

1. **Proprietary Information.** I agree that all proprietary and confidential information, whether or not in writing, concerning the Company's business, technology, business relationships or financial affairs which the Company has not released to the general public (collectively, "Proprietary Information") and all tangible embodiments thereof are and will be the exclusive property of the Company. By way of illustration, Proprietary Information may include information or material which has not been made generally available to the public, such as: (a) *corporate information*, including plans, strategies, methods, policies, resolutions, negotiations or litigation; (b) *marketing information*, including strategies, methods, customer or business partner identities or other information about customers, business partners, prospect identities or other information about prospects, or market analyses or projections; (c) *financial information*, including cost and performance data, debt arrangements, equity structure, investors and holdings, purchasing and sales data and price lists; (d) *operational and scientific information*, including plans, specifications, manuals, forms, templates, software, pre-clinical and clinical testing data and strategies, research and development strategies, designs, methods, procedures, formulas, data, reports, discoveries, inventions, improvements, concepts, ideas, know-how and trade secrets; and (e) *personnel information*, including personnel lists, reporting or organizational structure, resumes, personnel data, compensation structure, performance evaluations and termination arrangements or documents. Proprietary Information also includes information received in confidence by the Company from its customers or suppliers, business partners or other third parties.

2. **Recognition of Company's Rights.** I will not, at any time, without the Company's prior written permission, either during or after my employment, disclose any Proprietary Information to anyone outside of the Company, or use or permit to be used any Proprietary Information for any purpose other than the performance of my duties as an employee of the Company. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure of all Proprietary Information. I will deliver to the Company all copies and other tangible embodiments of Proprietary Information in my possession or control upon the earlier of a request by the Company or termination of my employment.

3. **Rights of Others.** I understand that the Company is now and may hereafter be subject to non-disclosure or confidentiality agreements with third persons ("Third Party Agreements") which require the Company to protect or refrain from use or disclosure of proprietary information. I agree to be bound by the terms of such Third Party Agreements in the event I have access to such proprietary information and have actual knowledge or reasonable grounds to believe that the proprietary information is subject to a Third Party Agreement. I understand that the Company strictly prohibits me from using or disclosing confidential or proprietary information belonging to any other person or entity (including any employer or former employer), in connection with my employment. In addition, I understand that the Company prohibits me from bringing any confidential information belonging to any other person or entity onto Company premises or into Company workspaces. I expressly acknowledge and agree that I will indemnify and hold the Company harmless against loss, damage, liability or expense arising from any claim based upon circumstances alleged to be inconsistent with the representations in this paragraph 3.

4. **Commitment to Company; Avoidance of Conflict of Interest.** While an employee of the Company, I will devote my full-time efforts to the Company's business and I will not engage in any other business activity, except as expressly authorized in writing and in advance by the Company. I will advise an authorized officer of the Company or his or her nominee at such time as any activity of either the Company or another business presents me with a conflict of interest or the appearance of a conflict of interest as an employee of the Company. I will take whatever action is reasonably requested of me by the Company to resolve any conflict or appearance of conflict which it finds to exist.

5. **Developments.** I acknowledge that all work performed by me is on a "work for hire" basis, and I hereby do assign and transfer and, to the extent any such assignment cannot be made at present, will assign and transfer, to the Company and its successors and assigns all my right, title and interest in and to all inventions, discoveries, designs, developments, methods, modifications, improvements, processes, algorithms, data, databases, computer programs, research, formulae, techniques, trade secrets, graphics or images, and audio or visual works and other works of authorship, including works in progress (collectively, "Developments"), whether or not patentable or copyrightable, that are created, made, conceived or reduced to practice by me (alone or jointly with others) or under my direction during the period of my employment, that (a) relate to the business of the Company or any customer of, supplier to or business partner of the Company or any of the products or services being researched, developed, manufactured or sold by the Company or which may be used with such products or services; or (b) result from tasks assigned to me by the Company; or (c) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by the Company ("Company-Related Developments"), and all related patents, patent applications, trademarks and trademark applications, copyrights and copyright applications, and other intellectual property rights in all countries and territories worldwide and under any international conventions ("Intellectual Property Rights"). To the extent necessary to identify, create or protect

the Company's interest or ownership in its rights to any Company-Related Developments as reasonably determined by the Company at any time, I agree to make full disclosure and reporting to the Company regarding such Company-Related Developments or Intellectual Property Rights.

To preclude any possible uncertainty, if there are any Developments that I have, alone or jointly with others, conceived, developed or reduced to practice prior to the commencement of my employment with the Company that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement ("Prior Inventions"), I have set forth on Exhibit A attached hereto a complete list of those Prior Inventions. If disclosure of any such Prior Invention would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Prior Inventions in Exhibit A but am only to disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason. If there are any patents or patent applications in which I am named as an inventor, other than those which have been assigned to the Company ("Other Patent Rights"), I have also listed those Other Patent Rights on Exhibit A. If no such disclosure is attached, I represent that there are no Prior Inventions or Other Patent Rights. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process or machine, research or development program, or other work done for the Company, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, worldwide license (with the full right to sublicense through multiple tiers) to make, have made, modify, use, sell, offer for sale and import such Prior Invention. Notwithstanding the foregoing, I will not incorporate, or permit to be incorporated, Prior Inventions in any Company-Related Development without the Company's prior written consent.

This Agreement does not obligate me to assign to the Company any Development which, in the sole judgment of the Company, reasonably exercised, is developed entirely on my own time and does not substantially relate to the business efforts of the Company, or to the research and development efforts in which, during the period of my employment, the Company actually is engaged or reasonably would be engaged, and does not result from the use of premises or equipment owned or leased by the Company ("Individual Developments"). However, I will also promptly disclose to the Company any such Individual Developments for the purpose of determining whether they qualify for such exclusion. I understand that to the extent this Agreement is required to be construed in accordance with the laws of any state which precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this paragraph 5 will be interpreted not to apply to any invention which a court rules and/or the Company agrees falls within such classes. I also hereby waive all claims to any moral rights or other special rights which I may have or accrue in any Company-Related Developments.

6. **Documents and Other Materials.** I will keep and maintain records of all Proprietary Information and Company-Related Developments developed by me during my employment, as reasonably requested by the Company, and such documents will be available to and remain the sole property of the Company at all times.

All files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, or other written, photographic or other tangible material containing Proprietary Information, whether created by me or others, which come into my custody or possession, are the exclusive property of the Company to be used by me only in the performance of my duties for the Company. Any property situated on the Company's premises and owned by the Company, including without limitation computers, disks and other storage media, filing cabinets or other work areas, is subject to inspection by the Company at any time with or without notice. In the event of the termination of my employment for any reason, I will deliver to the Company all Company property and equipment in my possession, custody or control, including all files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, and other written, photographic or other tangible material containing Proprietary Information, and other materials of any nature pertaining to the Proprietary Information of the Company and to my work, and will not take or keep in my possession any of the foregoing or any copies.

7. **Enforcement of Intellectual Property Rights.** I will cooperate fully with the Company, both during and after my employment with the Company, with respect to the procurement, maintenance and enforcement of Intellectual Property Rights in Company-Related Developments. I will sign, both during and after the term of this Agreement, all papers, including without limitation copyright applications, patent applications, declarations, oaths, assignments of priority rights, and powers of attorney, which the Company reasonably may deem necessary or desirable in order to protect its rights and interests in any Company-Related Development or Intellectual Property Rights therein. If the Company is unable, after reasonable effort, to secure my signature on any such papers, I hereby irrevocably designate and appoint each officer of the Company as my agent and attorney-in-fact to execute any such papers on my behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Company-Related Development, including any Intellectual Property Rights therein.

8. **Non-Solicitation.** In order to protect the Company's Proprietary Information and good will, during my employment and for a period of one (1) year following the date of the cessation of my employment with the Company, I will not, directly or indirectly, in any manner, solicit, entice or attempt to persuade any employee or consultant of the Company to leave the Company for any reason or otherwise participate in or facilitate the hire, directly or through another entity, of any person who is then employed or engaged by the Company.

9. **Government Contracts.** I acknowledge that the Company may have from time to time agreements with other persons or with the United States Government or its agencies which impose obligations or restrictions on the Company regarding inventions made during the course of work under such agreements or regarding the confidential nature of such

2

work. I agree to comply with any such obligations or restrictions upon the direction of the Company. In addition to the rights assigned under paragraph 5, I also hereby assign to the Company (or any of its nominees) all rights which I have or acquired in any Developments, full title to which is required to be in the United States under any contract between the Company and the United States or any of its agencies.

**10. Prior Agreements.** I hereby represent that, except as I have fully disclosed previously in writing to the Company, I am not bound by the terms of any agreement with any previous or current employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of my employment with the Company or to refrain from competing, directly or indirectly, with the business of such employer or any other party. I further represent that my performance of all the terms of this Agreement as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to my employment with the Company. I will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

**11. Remedies Upon Breach.** I understand that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and I consider them to be reasonable for such purpose. Any breach of this Agreement is likely to cause the Company substantial and irrevocable damage and therefore, in the event of such breach, the Company, in addition to such other remedies which may be available, will be entitled to specific performance and other injunctive relief without the posting of a bond. If a court of law makes a final determination that I have violated this Agreement, in addition to all other remedies available to the Company at law, in equity, and under contract, I agree that I am obligated to pay all the Company's reasonable costs of enforcement of this Agreement, including attorneys' fees and expenses.

**12. Use of Voice, Image and Likeness.** I hereby give the Company permission to use any and all of my voice, image and likeness, with or without using my name, in connection with the products and/or services of the Company, for the purposes of advertising and promoting such products and/or services and/or the Company, and/or for other purposes deemed appropriate by the Company in its reasonable discretion, except to the extent expressly prohibited by law.

**13. Publications and Public Statements.** I will obtain the Company's written approval before publishing or submitting for publication any material that relates to my work at the Company and/or incorporates any Proprietary Information. To ensure that the Company delivers a consistent message about its products, services and operations to the public, and further in recognition that even positive statements may have a detrimental effect on the Company in certain securities transactions and other contexts, any statement about the Company which I create, publish or post during my period of employment and for six (6) months thereafter, on any media accessible by the public, including but not limited to social media and networking services and sites, electronic bulletin boards and Internet-based chat rooms, must first be reviewed and approved by an officer of the Company before it is released in the public domain.

**14. No Employment Obligation.** I understand that this Agreement does not create an obligation on the Company or any other person to continue my employment. I acknowledge that, unless otherwise agreed in a formal written employment agreement signed on behalf of the Company by an authorized officer, my employment with the Company is at will and therefore may be terminated by the Company or me at any time and for any reason, with or without cause.

**15. Survival and Assignment by the Company.** I understand that my obligations under this Agreement will continue in accordance with its express terms regardless of any changes in my title, position, duties, salary, compensation or benefits or other terms and conditions of employment. I further understand that my obligations under this Agreement will continue following the termination of my employment regardless of the manner of such termination and will be binding upon my heirs, executors and administrators. The Company will have the right to assign this Agreement to its affiliates, successors and assigns. I expressly consent to be bound by the provisions of this Agreement for the benefit of the Company or any parent, subsidiary or affiliate to whose employ I may be transferred without the necessity that this Agreement be resigned at the time of such transfer.

**16. Notice of Resignation.** If I elect to resign from my employment with the Company, I agree to provide the Company with written notification of my resignation at least two (2) weeks prior to my intended resignation date. Such notice shall include the name and address of any subsequent employer and/or person or entity which whom or which I intend to engage in business activities, and my job title/position. The Company may elect to waive all or part of the two (2) week notice period in its sole discretion.

**17. Severability.** In case any provisions (or portions thereof) contained in this Agreement shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If, moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

**18. Defend Trade Secrets Act of 2016; Other Notices.** I understand that pursuant to the federal Defend Trade Secrets Act of 2016, I shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other

3

proceeding, if such filing is made under seal. I further understand that nothing contained in this Agreement limits my ability to (A) communicate with any federal, state or local governmental agency or commission, including to provide documents or other information, without notice to the Company, or (B) share compensation information concerning myself or others, except that this does not permit me to disclose compensation information concerning others that I obtain because my job responsibilities require or allow access to such information.

**19.    Choice of Law and Jurisdiction.** This Agreement will be deemed to be made and entered into in the Commonwealth of Massachusetts, and will in all respects be interpreted, enforced and governed under the laws of the Commonwealth of Massachusetts. I hereby agree to consent to personal jurisdiction of the state and federal courts situated within Massachusetts for purposes of enforcing this Agreement, and waive any objection that I might have to personal jurisdiction or venue in those courts.

**20.    Other Agreements and Obligations.** This Agreement constitutes the entire agreement between me and the Company regarding the subject matter hereof, and supersedes any previous agreements or understandings that I had or may have had between me and the Company regarding the subject matter, except any obligations specifically preserved in this Agreement.

**21.    Independence of Obligations.** My obligations under this Agreement are independent of any obligation, contractual or otherwise, the Company has to me. The Company's breach of any such obligation shall not be a defense against the enforcement of this Agreement or otherwise limit my obligations under this Agreement.

I UNDERSTAND THAT THIS AGREEMENT AFFECTS IMPORTANT RIGHTS. BY SIGNING BELOW, I CERTIFY THAT I HAVE BEEN ADVISED BY THE COMPANY THAT I HAVE THE RIGHT TO CONSULT WITH COUNSEL PRIOR TO SIGNING THIS AGREEMENT.

IN WITNESS WHEREOF, the undersigned has executed this agreement as a sealed instrument.

EMPLOYEE

Signed: *David Smith* (DocuSigned by: 88D2D73F229B415...)
(Employee's full name)

Type or print name: David Smith

Date: 12/11/2018

4

# EXHIBIT A

To:      **TCorp62018 LLC**

From:    David Smith

Date:    12/11/2018

SUBJECT:    **Prior Inventions**

The following is a complete list of all inventions or improvements relevant to the subject matter of my employment by the Company that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

☒    No inventions or improvements

☐    See below:

_____

_____

_____

☐    Additional sheets have been emailed to TCorp62018 contact

The following is a list of all patents and patent applications in which I have been named as an inventor:

☒    None

☐    See below:

_____

_____

_____

# EXHIBIT 2

## Acknowledgment

By signing below, I represent and warrant that (a) I am not bound by any agreement (such as a non-competition or non-solicitation agreement) that restricts me from becoming an employee of Tcorp62018 LLC (the "Company") or limits the performance of my job duties and responsibilities; and (b) I have not retained, and will not retain, in my possession, custody or control, any: (i) documents (hard copy, electronic, or otherwise) or other tangible embodiments of any confidential or non-public information of any former employer (for the avoidance of doubt, this includes emails and electronic documents stored in the "cloud"); or (ii) any other property, of any type belonging, to any prior employer.  I also agree that: (a) I will not disclose to the Company, or any of its employees, contractors or agents, any confidential information belonging to any current or former employer (or any other person or entity to whom I owe a duty to keep such information confidential); and (b) in the course of performing my duties on behalf of the Company, I will not make any use of any such information.  If I have concerns at any time about the matters in this Acknowledgment, I will immediately notify Erica Davila.

Signature: _____   Date: 1/17/19
             Dave Smith