# EXHIBIT C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| OPTUM, INC. and OPTUM SERVICES, INC., *Plaintiffs*, v. DAVID WILLIAM SMITH, *Defendant*. | Civil Action No.: 19-cv-10101 |

## AFFIDAVIT OF JOHN F. WELSH

I, John F. Welsh, hereby state under penalty of perjury as follows:

1. I am counsel for David William Smith, the Defendant in this action. I submit this Affidavit in opposition to Plaintiffs' Motion for a Temporary Restraining Order (the "Motion"). The matters set forth herein are based on my personal knowledge.

2. Plaintiffs Optum, Inc. and Optum Services, Inc. (collectively "Optum") filed this action on January 16, 2019. On January 17, 2019, the Court ordered the parties to meet and confer with respect to the Motion.

3. I conducted a meet and confer phone conference with Optum's counsel on January 17 and again on January 18. During these conferences, I asked Optum's counsel if Optum would identify a single or specific document or piece of data or trade secret that it claims Mr. Smith retained in his possession or has given to ABC and should be destroyed or returned. Optum's counsel would not identify anything in particular.

4. In previous correspondence with Optum's counsel, including a December 28, 2018 letter I sent on behalf of Mr. Smith responding to Optum's December 21 letter threatening legal action against him, I informed Optum that Mr. Smith had forwarded from his Optum email account

to his personal email account an email chain with a document containing his headshot. I further advised that this document, which remains in Mr. Smith's email account and has not been shared with any third party, will be deleted once Optum so instructs. Optum never provided a response. A true and correct copy of my December 28 letter to Optum is attached as Exhibit 1. During the January 17 and 18 phone conferences, I asked Optum's counsel, again, whether Optum would like Mr. Smith to return or delete the headshot document. Optum's counsel responded that the document should be "preserved."

5.      In my December 28 letter, I requested a copy of Mr. Smith's personnel record pursuant to Mass. Gen. Laws Chapter 149, Section 52C. Optum produced Mr. Smith's personnel record in response to this request on January 7, 2019. The personnel record includes an Employment Arbitration Policy in which Mr. Smith and Optum agreed to arbitration of all employment-related claims, including "claims for unfair competition and violation of trade secrets" and "claims for breach of any contract or covenant[.]" A true and correct copy of the Employment Arbitration Policy is attached as Exhibit 2.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____1/21_____, 2019

John F. Welsh

# EXHIBIT 1



|  |  |  |
|---|---|---|
| | 125 Summer Street<br>Suite 1200<br>Boston, MA 02110 | Main: 617.247.4100<br>Fax:  617.247.4125<br>bellowelsh.com |

**John F. Welsh, Esq.**

Direct: 617.247.8476
jwelsh@bellowelsh.com

December 28, 2018

Marianne D. Short
Executive Vice President and
Chief Legal Officer
UnitedHealth Group
9900 Bren Road East
Minnetonka, MN 55343

**Re: Mr. David Smith / Optum**

Dear Ms. Short:

This firm represents Mr. David Smith concerning the matters referenced in your letter dated December 1, 2018. All further communications regarding Mr. Smith should be directed to me or my colleague Justin Engel.

Mr. Smith has fully complied with all lawful obligations owed to Optum. Below I will explain why I believe this to be the case, and then suggest potential resolution which I am hopeful should resolve the matter.

1. Optum and ABJ Are Not Competitors.

Optum basically consists of three businesses: pharmacy benefit management (Optum Rx), health care delivery and management, and data analytics (OptumInsight). Mr. Smith's new employer, TCorp62018 LLC ("ABJ"), is an independent organization that is focused on creating better health outcomes, increased patient satisfaction, and lower costs for Amazon, Berkshire Hathaway, and JPMorgan Chase employees and their dependents. The goal is to create better models of care that can be scaled widely and make getting the right care simpler. The Company is an independent LLC that is separate from its three founding companies - Amazon, Berkshire Hathaway, JPMorgan Chase ("the Company Founders") – and the Company Founders dedicate resources the Company needs for the Company to be a success. At this point, the Company is focused exclusively on Amazon, Berkshire Hathaway and JPMorgan Chase employees and their families.

ABJ has no products. ABJ does not compete for business with Optum and, to Mr. Smith's knowledge, has no plans to do so. Rather, ABJ will partner with companies like Optum to help Amazon, Berkshire Hathaway and JPMorgan Chase employees better connect with the medical services they need. Optum is well-aware of these facts. Optum's own Head of Strategy

Marianne D. Short
December 28, 2018
Page 2

has openly stated that ABJ "is more likely a customer than a competitor." This observation is accurate, and dispositive of Optum's non-competition claim.

Your letter states that "publicly available media releases" indicate that ABJ intends to "manage prescription benefits, ship prescriptions, open primary care clinics and develop/sell software that mines data from digitized patient records." Please double-check your sources: <u>these media references are to Amazon, and are not references to ABJ.</u> Again, these are separate entities and Mr. Smith will be employed by ABJ, not Amazon. Thus, your entire non-competition argument rests on a mistaken premise.

    2.    <u>Mr. Smith Has Not Misappropriated Optum Confidential Information.</u>

Your letter makes several allegations of misappropriation of confidential information against Mr. Smith. Again, you are mistaken and these claims are without merit.

    a.    <u>Off-Site Meeting Attendance.</u> Your letter posits that an "acute" example of Mr. Smith's alleged improper conduct was his attendance at an all-day strategy session, when his resignation was "imminent". Since Mr. Smith had not received his job offer from ABJ yet, the offer was not imminent at that time, but rather speculative. It was completely appropriate for Mr. Smith to continue working diligently for Optum until the offer was received and accepted, which is precisely what he did. This would include active participation in an off-site meeting which Mr. Smith helped prepare and present. Moreover, although your letter implies the offsite strategy session was a highly significant event, the plain fact is that similar strategy sessions occurred every three months or so, and Mr. Smith was already privy to much of what was discussed at the December 2018 off-site in the regular course of his duties.

    b.    <u>Alleged Electronic Misappropriation.</u> The allegation concerning alleged misappropriation of documents is similarly unfounded.

Your letter states that misappropriation occurred on three specific dates: November 19, December 4 and December 10, 2018. Mr. Smith possesses only one email sent from his Optum account to his personal Gmail account: it is dated November 19, 2018. It is an email chain with a slide deck attachment sent to Mr. Smith and other strategy team members. Mr. Smith forwarded it to his personal email account to save a copy of his photograph (his "headshot" portrait) that appeared on the back slide. If you reviewed the email that transmitted the slide deck to the strategy team, you will recall it made specific reference to the headshots as being the reason for the distribution. This email, which remains in Mr. Smith's email account and has not been shared with any third party, will be deleted once Optum so instructs.

As to the two other dates referenced in your letter, Mr. Smith possesses no emails from Optum on those dates.

As you know, Mr. Smith left his Optum laptop with the Company when he was placed on administrative leave. As that laptop will show, from time to time he would forward emails from Optum to his personal account. Those emails which pertained to Optum business were

Marianne D. Short
December 28, 2018
Page 3

read/worked on at home and then deleted. Often that occurred in the context of a vacation or when he would be away on a weekend. The others were personal emails unrelated to Optum (often transmittals of personal documents scanned at work).

   b. <u>Alleged Misappropriation of Paper Documents.</u> Your letter suggests that your misappropriation allegation may rest on the fact that Mr. Smith printed out various documents which you speculate may have been removed from Optum and disclosed without authorization to third parties. Once again, what you surmise and allege is mistaken.

  Mr. Smith routinely printed documents and worked using hard copy documents. This was the case up to the point he was placed on administrative leave. Any Optum documents printed out by Mr. Smith were part of his work for Optum and were left at Optum.

  To be clear, Mr. Smith has no hard or electronic copies of any Optum confidential documents. He did not print-out and remove confidential Optum documents to his home. He has shared no Optum confidential documents with ABJ or any third party except as authorized by Optum during the course of his employment. He is willing to sign an affidavit attesting to these facts.

  3. <u>Talking with Other Employees.</u>

  Optum asserts that Mr. Smith talked with colleagues about matters outside his areas of responsibility, and that this connotes an intent not to comply with post-employment restrictive covenants. Your assertion reflects a lack of appreciation of what the Optum strategy team members routinely do in the course of their jobs as well, again, a misunderstanding that ABJ is a competitor of Optum. The strategy team continually talks among themselves and with other Optum colleagues about a wide range of business issues and concepts. They use each other as sounding boards, to get different perspectives on issues they are thinking through, and to collaborate. These discussions in no way demonstrate that Mr. Smith was or is planning to breach his non-compete obligations.

  If you provide specific information concerning these alleged communications with Optum employees (names, date and topics discussed – the more specific, the better), Mr. Smith will endeavor to provide additional information concerning the communications. He can state now, categorically, that he did not engage in any such communication at Optum for any purpose other than advancing Optum's business interests.

  4. <u>Non-Solicitation.</u> Mr. Smith will not solicit any Optum employees to leave Optum or to join ABJ for the restricted period.

  5. <u>Information Requested.</u>

You have asked for various facts concerning Mr. Smith's hire by ABJ.

Marianne D. Short
December 28, 2018
Page 4

      Mr. Smith submitted an on-line application to ABJ on September 28, 2018 on his own initiative. He received an acknowledgement of receipt but no contemporaneous expression of interest. On October 18, 2018, an ABJ representative contacted Mr. Smith through LinkedIn. This reach-out by ABJ was unrelated to the electronic application submitted in September. Mr. Smith spoke with or interviewed with ABJ officials on October 22, 23, and 29 and on November 2, 2018.

      On December 6, 2018, at about 3 or 4 p.m., Mr. Smith received a brief cell phone call advising him that he would be receiving an offer from ABJ. On December 7, 2018, Mr. Smith received an offer letter from ABJ. He signed and returned the ABJ offer letter on December 11, 2018.

      Mr. Smith advised Nick Seddon that he had accepted the ABJ offer on December 11, 2018. Believing that this communication should be done in person, he advised Mike Weissel and Steve Wollen of his acceptance of ABJ's offer on December 13 when they returned to the office from an out of town engagement. The communications with these managers were cordial and professional. Regret was expressed that Mr. Smith was leaving, and the hope to collaborate in the future was briefly discussed. Mr. Smith focused on transitioning his duties the remainder of the day, until he was later advised at about 3:30 p.m. that he was being placed on administrative leave and told to leave the building.

      Mr. Smith has not been given an ABJ job description. He expects that his initial tasks will be in-depth research focused on the delivery and costs of health care for the over one million individuals covered by the health plans of Amazon, Berkshire Hathaway and JPMorgan Chase. His start date was set for January 2, 2019 but has been postponed so that the corporate parties may speak directly on January 2 and address your concerns. He is uncertain, at this point, of his exact start date.

      Your request for assurance in paragraph 8 of your letter is problematic due to the ambiguous use of the term "related." Interpreted broadly, your letter's description of proscribed activities encompasses the entirety of health care.

      To be sure, Mr. Smith will not use or disclose Optum confidential information, proprietary information or trade secrets. He will exclude himself from any conversation, meeting, assignment or other circumstance that would involve the use or disclosure of such Optum information.

      ABJ has also instructed Mr. Smith, and all of its employees, to safeguard and not use confidential information of former employers in the performance of their ABJ duties. ABJ has specifically instructed Mr. Smith to follow the guidelines set forth in the above paragraph.

      You have asked for a clear identification of "United Health" documents in Mr. Smith's possession. He has the email chain containing his headshot portrait, he has a few of his own personnel documents, and some publicly filed United Health reports. He has no other Optum (or United Health) documents in his possession. He will execute an affidavit attesting to these facts.

Lastly, as to solicitation of Optum employees, Mr. Smith has and will continue to abide by all his post-employment restrictive covenants, including his non-solicitation obligation pertaining to Optum employees. For the avoidance of ambiguity on this issue, Mr. Smith will not participate in any respect during the restricted period in any ABJ interview or hire of Optum employees.

6. <u>Mr. Smith's Requests.</u>

It is our hope that upon review of the above information, Optum will accept the explanations and representations made above and withdraw its protest of Mr. Smith's employment by ABJ on the terms outlined. However, given the ongoing possibility of litigation I am constrained to make two requests on Mr. Smith's behalf.

First, on behalf of Mr. Smith, I request a full and complete copy of his entire "personnel record" pursuant to Mass. Gen. Laws Chap. 149, Section 52C ("Section 52C"), the Massachusetts' personnel record statute. Section 52C requires that all requested documents be produced within five business days of your receipt of this request.

Section 52C specifies that a record kept by an employer that identifies an employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment or disciplinary action. Thus, we specifically request all documents that were used and relied on in determining to place Mr. Smith on administrative leave and terminate him and all those documents related to the allegations of fiduciary breach referenced in your letter. I request that this production be supplemented if Optum discovers any other documents that they believe Mr. Smith has wrongfully taken.

Third, your letter raises the unfortunate possibility of litigation between the parties if Mr. Smith's status is not addressed and resolved expeditiously. In these circumstances, United Health/Optum is legally required to take immediate, affirmative steps to preserve and maintain all hard copy or electronic documents that may in any respect be relevant to Mr. Smith's employment, his placement on administrative leave and termination, and the allegations raised in your letter. Pursuant to this legal preservation of records requirement, Optum must save the forensic analysis upon which its misappropriation allegations are based as well as all relevant metadata. Optum must also preserve and maintain all internal documents pertaining to ABJ and its competitive posture vis-a-vis Optum. Lastly, Optum must preserve records showing the former employers of recently hired United Health and Optum employees over the past year, as well as the subsequent employers of departing Optum employees during that same period. Optum is required to suspend any routine document retention/destruction policies and place a "litigation hold" to ensure the preservation of all relevant documents, including electronically stored information that refers or relates to the above referenced subject.

Marianne D. Short
December 28, 2018
Page 6

      Please do not hesitate to contact me if you have any questions concerning the foregoing. It is my hope that we have provided the necessary information to allow an amicable resolution of Optum's concerns.

Very truly yours,<br><br>John F. Welsh

Enclosure
cc:    Erica M. Davila, Esq.
        Michael Sheehan., Esq.

December 7, 2018

Via email: dave.smith49@gmail.com

PERSONAL AND CONFIDENTIAL

Mr. David W. Smith
3 Rangeley Road
Newton, MA 02465

Dear Dave:

  Tcorp62018 LLC ("the Company") is pleased to offer you the full-time position of Director, Product Strategy and Research, reporting to Jack Stoddard, Chief Operating Officer, with a proposed start date of January 2, 2019. This offer is conditioned on the successful completion of a background screen and references. We are excited about the prospect of you joining our team and look forward to the addition of your professionalism and experience to help the Company achieve its goals.

  Your salary will be paid at an initial rate of $12,500.00 semi-monthly ($300,000.00 annualized). You will be paid in accordance with the Company's normal payroll practices as established or modified from time to time. Currently, salaries are paid on a semi-monthly basis. You will be eligible to participate in benefits programs to the same extent as, and subject to the same terms, conditions and limitations applicable to, other employees of the Company of similar rank and tenure. A Benefits Overview is attached.

  The Company requires you to verify that the performance of your position at Tcorp62018 LLC does not and will not breach any agreement entered into by you prior to employment with the Company (i.e., you have not entered into any agreements with previous employers that are in conflict with your obligations to Tcorp62108 LLC). Please provide us with a copy of any such agreements. You will also be required to sign an Employee Confidentiality and Assignment Agreement as a condition of your employment with the Company. A copy of this agreement is attached.

  Moreover, please provide us in electronic onboarding, for purposes of completing the I-9 form, sufficient documentation to demonstrate your eligibility to work in the United States.

  The above terms are not contractual. They are a summary of our initial employment relationship and are subject to later modification by the Company. Your employment with Tcorp62018 LLC will be "at-will," meaning that either you or the Company may terminate your employment relationship at any time, for any reason, with or without prior notice. The Company has found that an "at-will" relationship is in the best interests of both the Company and its employees.

Mr. David W. Smith
December 7, 2018
Page two

We are very interested in having you join the Company. We look forward to receiving a response from you within five days acknowledging that you have accepted this offer of employment.

Sincerely,

DocuSigned by:

Atul A. Gawande
Chief Executive Officer

AAG/nbb
Enclosures

ACCEPTED:

DocuSigned by:
David Smith                                           12/11/2018
Employee Signature                                    Date

# EXHIBIT 2

**UnitedHealth Group Employment Arbitration Policy Acknowledgement Form**

DAVID SMITH

**Review and Acknowledge at the bottom of this page**

UnitedHealth Group Employment Arbitration Policy

**Employment Arbitration Policy**

**A.   STATEMENT OF INTENT**

UnitedHealth Group Incorporated and its subsidiaries and affiliates (referred to as "UnitedHealth Group") acknowledge that disagreements may arise between an individual employee[1] and UnitedHealth Group or between employees in a context that involves UnitedHealth Group. It is the intent of UnitedHealth Group that legal disputes be resolved as efficiently and amicably as possible, and that issues not resolved voluntarily through informal resolution or through the internal dispute resolution ("IDR") process be resolved through binding arbitration. Unless excluded below, legal disputes that cannot be resolved through voluntary informal resolution or the IDR process are covered under this Employment Arbitration Policy ("Policy").

This Policy is a binding contract between UnitedHealth Group and its employee. **Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy.** However, this Policy is not a promise that employment will continue for any specified period of time or end only under certain conditions. Employment at UnitedHealth Group is a voluntary (at will) relationship existing for no definite period of time and this Policy does not change that relationship.

The Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern this Policy.  All disputes covered by the Policy shall be decided by an arbitrator through arbitration and not by way of court or jury trial.

**B.   SCOPE OF POLICY**

This Policy creates a contract between UnitedHealth Group and employee requiring both parties to resolve employment-related disputes (except the excluded disputes listed below) that are based on a legal claim through final and binding arbitration. Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy.

UnitedHealth Group and employee mutually consent to the resolution by arbitration of all claims and controversies, past, present, or future, that employee may have against UnitedHealth Group or UnitedHealth Group may have against employee, which arise out of or relate to employee's employment, application for employment, and/or termination of employment.

Employees are encouraged to exhaust the IDR process before initiating arbitration. If an employment-related dispute is not resolved through the IDR process and the dispute is based on a legal claim not expressly excluded from this Policy, any party to the dispute may initiate the arbitration process. UnitedHealth Group is not required to follow the steps of either the IDR process or the Policy before initiating or implementing any disciplinary action.

Subject to the specific exclusions below, the claims covered by the Policy include, but are not limited to: claims for unfair competition and violation of trade secrets; claims incidental to the employment relationship but arising after that relationship ends (for example, claims arising out of or related to post-termination defamation or job references and claims arising out of or related to post-employment retaliation); claims for wages or other

000044

compensation due (including but not limited to, minimum wage, overtime, meal and rest breaks, waiting time penalties, vacation pay and pay on separation); claims for breach of any contract or covenant (express or implied); tort claims; common law claims; equitable claims; claims for discrimination and harassment; retaliation claims; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded below.

Covered claims include any disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Policy or any portion of the Policy is void or voidable, with the exception noted in the Class and Representative Actions Waivers section below**.**

Claims excluded from mandatory arbitration under the Policy are (i) Workers' Compensation benefit claims (but workers' compensation discrimination and/or retaliation claims are covered); (ii) state unemployment or disability insurance compensation claims; (iii) claims for severance benefits under the UnitedHealth Group Severance Pay Plan; (iv) claims for benefits under UnitedHealth Group's other ERISA benefit plans; (v) claims for benefits under UnitedHealth Group's Short-Term Disability Plan; (vi) claims that may not be the subject of a mandatory arbitration agreement as provided by Section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), Section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims; and (vii) claims that the Dodd-Frank Wall Street Reform and Consumer Protection Act or other controlling federal law bars from the coverage of mandatory pre-dispute arbitration agreements..

This Policy does not preclude an employee from filing a claim or charge with a governmental administrative agency, such as the National Labor Relations Board, the Department of Labor, or the Equal Employment Opportunity Commission, or from filing a workers' compensation or unemployment compensation claim in a statutorily-specified forum. In addition, this Policy does not preclude either an employee or UnitedHealth Group from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable law. However, after the court has issued a ruling concerning the emergency or temporary injunctive relief, the employee and UnitedHealth Group are required to submit the dispute to arbitration pursuant to this Policy.

An issue is subject to arbitration only if it states a claim under applicable federal, state, or local law. An arbitrator or a court of law with jurisdiction shall dismiss, without a hearing on the merits, any matter which does not state a claim under applicable federal, state, or local law.

**C.    CLASS AND REPRESENTATIVE ACTION WAIVERS**

There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or collective action, or in a representative capacity on behalf of any other person. Nor shall the Arbitrator have any authority to hear or arbitrate any such dispute. Accordingly,

   1. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Policy in any case in which (1) the dispute is filed as a class or collective action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances, the class action must be litigated in a civil court of competent jurisdiction; and

   2. There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general act representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver does not apply to any claim employee brings in arbitration as a private attorney general solely on employee's own behalf and not on behalf of or regarding others. The Private Attorney General Waiver shall be severable from this Policy in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

Regardless of anything else in this Policy and/or any rules or procedures that might otherwise be applicable by virtue of this Policy or by virtue of any arbitration organization rules or procedures that now apply or any amendments and/or modifications to those rules, the interpretation, enforceability, applicability, unconscionability or formation of the Class Action Waiver and Private Attorney General Waiver may be determined only by a court and not by an arbitrator.

**D. ARBITRATION RULES AND PROCEDURES**

The arbitration will be administered by the American Arbitration Association ("AAA") and, except as provided in this Policy, shall be in accordance with the then-current Employment Arbitration Rules of the AAA ("AAA Rules"). The AAA Rules are available via the Internet at www.adr.org/employment or by using a search engine such as www.google.com to search for "AAA Employment Arbitration Rules." To the extent any of the terms, conditions, or requirements of this Policy conflict with AAA Rules, the terms, conditions, or requirements of this Policy shall govern, All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Legal Department receives the Demand for Arbitration, except that any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim.

**1. Initiation of Arbitration Proceeding**

**a. Arbitration Initiated by Employee** - UnitedHealth Group shall pay 100 percent in excess of the first twenty-five dollars ($25) of the required AAA administrative fee. An employee may initiate arbitration by submitting, within the applicable statute of limitations period, a written demand for arbitration which states a claim under applicable federal, state, or local law to Corporate Legal Department, UnitedHealth Group, 9900 Bren Road East, MN008-T502, Minnetonka, MN 55343, with a check for $25 payable to "UnitedHealth Group." The demand shall set forth the dispute, including the alleged act or omission at issue, the name, address and telephone number of the employee, and the names of all persons allegedly involved in the act or omission. Within 30 business days of receiving such demand UnitedHealth Group shall file the demand with the appropriate office of the AAA, together with the applicable administrative fee as provided in the AAA's fee schedule.

**b. Arbitration Initiated by UnitedHealth Group** - UnitedHealth Group may initiate arbitration by submitting, within the applicable statute of limitations period, a written demand for arbitration which states a claim under applicable federal, state, or local law to the employee's last home address of record via certified mail or overnight mail. The demand shall set forth the dispute, including the alleged act or omission at issue, the name, address and telephone number of the employee, and the names of all persons allegedly involved in the act or omission. Within 30 business days of submitting the demand to the employee, UnitedHealth Group shall file the demand with the appropriate office of the AAA, together with the applicable administrative fee as provided in the AAA's fee schedule. When arbitration is initiated by UnitedHealth Group, the company is responsible for 100% of all AAA administrative fees.

**2. Appointment of Neutral Arbitrator**

The arbitrator shall be selected in the following manner:

**a.** As soon as practicable, the AAA shall submit to each party an identical list of nine (9) proposed arbitrators.

**b.** Each party shall have ten (10) business days from the mailing date of the list to cross off names of arbitrators to which the party objects, number the remaining names in order of preference and return the list to the AAA. Each party may strike up to three names without cause.

     **c.** If the party does not return the list within the time specified, all persons on the list shall be deemed acceptable.

     **d.** If only one common name remains on the lists of all parties, that individual shall be designated as the arbitrator. If more than one common name remains on the lists of all parties, the AAA shall appoint an arbitrator remaining on the list in the order of preference, to the extent the order of preference of the parties can be reconciled by the AAA.

In the event the parties fail to agree on any of the persons named, or if an acceptable arbitrator is unwilling to act, the AAA shall issue an additional list of arbitrator names to the parties.

    **3.**    **Qualifications of Neutral Arbitrator**

Unless the parties jointly agree otherwise, the arbitrator shall be an attorney experienced in employment law and licensed to practice law in the state in which the arbitration is convened, or a retired judge from any jurisdiction.

    **4.**    **Vacancies**

If a vacancy occurs, if an appointed arbitrator is unable to serve promptly, or if an arbitrator is disqualified under subparagraph 3 above, the vacancy shall be filled in accordance with subparagraph 2.

    **5.**    **Summary Disposition**

The arbitrator shall have the authority to issue an award or partial award without conducting an arbitration hearing on the grounds that there is no claim stated on which relief can be granted or that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law, consistent with Rule 12 or Rule 56 of the Federal Rules of Civil Procedure. Upon the request of either party, the arbitrator will establish a briefing schedule and, if necessary, schedule an opportunity for oral argument prior to considering such motions for dispositive motions.

    **6.**    **Date, Time, and Place of Hearing**

The arbitrator shall set the date and time of the hearing. Unless the parties jointly agree otherwise, the arbitration shall take place in or near the city in which employee is or was last employed by UnitedHealth Group.

    **7.**    **Representation**

Any party may be represented by an attorney or by him or herself. A party must inform the other party and the AAA of the name, address and telephone number of an authorized representative at least three (3) business days prior to the date set for the hearing.

    **8.**    **Confidentiality**

All proceedings under this Policy are private and confidential, unless applicable law provides to the contrary. The arbitrator shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law provides to the contrary. The arbitrator shall have the authority to make appropriate rulings to safeguard that confidentiality.

    **9.**    **Stenographic Record**

000047

Either party may request a stenographic record of the hearing. The party that requests the record shall bear the cost of such a record. If both parties request a stenographic record, the cost shall be borne equally by the parties.

10. **Discovery**

   **a. Interrogatory** - Each party shall be entitled to propound and serve upon the other party one interrogatory in a form consistent with Rule 33 of the Federal Rules of Civil Procedure and which shall be limited to the identification of potential witnesses. "Identification" means that a party must identify each witness's name, current address and telephone number, and a brief description of the subject of testimony.

   **b. Requests for Production of Documents** - Each party shall be entitled to propound and serve upon the other party one set of Requests for the Production of Documents in a form consistent with Rule 34 of the Federal Rules of Civil Procedure and which shall be limited in number to twenty-five (25) requests (including subparts, which shall be counted separately). Parties reserve the right to make objections to any document request on the grounds that the request is irrelevant, overly broad, vague, or burdensome, or any other good faith objection available under the Federal Rules of Civil Procedure.

   **c. Depositions** - Each party shall be entitled to conduct a maximum of two (2) eight-hour days of depositions of witnesses or of the parties in accordance with the procedures set forth in Rule 30 of the Federal Rules of Civil Procedure. In addition, each party shall be entitled to conduct a maximum of one (1) eight-hour day of depositions of expert witnesses designated by the other party.

   **d. Physical and Mental Examinations** - Each party shall be entitled to obtain discovery consistent with Rule 35 of the Federal Rules of Civil Procedure.

   **e. Arbitrator Authority** - The arbitrator shall have the authority to resolve all issues concerning discovery that may arise between the parties. Each party can request that the arbitrator allow additional discovery, and additional discovery may be conducted under the parties' mutual stipulation or as ordered by the arbitrator. In addition, the arbitrator shall have the authority to issue subpoenas for the appearance of witnesses or the production of documents pursuant to applicable law.

   **f. Prehearing Submissions** - At least thirty (30) days prior to the hearing, the parties are required to exchange lists of witnesses, including any expert witnesses, who the parties anticipate will be called to testify at the hearing. In addition, the parties are required to exchange copies of all exhibits the parties intend to introduce as evidence at the hearing.

12. **Evidence**

The arbitrator shall apply the Federal Rules of Evidence.

13. **Award**

   **a. Form -** The award shall be in writing and shall set forth findings of fact and conclusions of law upon which the arbitrator based the award. All awards shall be executed in the manner required by law.

000048

**b. Scope of Relief –** Except as to disputes involving an employment agreement or equity award containing a Minnesota choice of law provision, the arbitrator shall follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in this Policy. In cases involving an employment agreement and/or equity award with a Minnesota choice of law provision, the arbitrator shall follow Minnesota law, any applicable Federal law, and the rules as stated in this Policy. The arbitrator shall have the authority to grant any remedy or relief (including attorneys' fees where authorized by statute) that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory limitations on damages.

**c. Final Judgment -** The award shall be final and binding upon all parties to the arbitration.

14. **Delivery of Award to Parties**

The award shall be deemed delivered to a party upon placement of the award, or a true and correct copy thereof, addressed to the party or its representative at the last known address in the U.S. mail, certified, return receipt requested; personal service of the award, or a true and correct copy thereof; or the filing of the award in any manner that is permitted by law.

15. **Severability**

Except as provided in the clause entitled "Class and Representative Action Waivers," above, if any portion or provision of this Policy is held to be void or unenforceable, the remainder of this Policy will be enforceable and any part may be severed from the remainder, as appropriate.

16. **Judicial Proceedings and Enforcement of Awards**

Either party may bring an action in a court of competent jurisdiction to compel arbitration under this Policy, to enforce an arbitration award, or to vacate an arbitration award.

17. **Expenses**

The expenses of witnesses for either side shall be paid by the party requiring the presence of such witnesses. Each side shall pay its own legal fees and expenses, except where such legal fees and expenses may be awarded under applicable law.

18. **Time Period for Arbitration**

The written Demand for Arbitration must be received within the time period allowed pursuant to the statute, regulation, or other law applicable to the alleged act or omission giving rise to the dispute. Nothing in this Policy relieves any party of the duty to exhaust administrative remedies by filing a charge or complaint with an administrative agency and obtaining a right to sue notice, where required by law.

19. **Interpretation and Application of Procedure**

The arbitrator shall interpret and apply these procedures insofar as they relate to the arbitrator's powers and duties. All other procedures shall be interpreted and applied by the AAA.

E.   **CONSIDERATION**

The mutual obligations by UnitedHealth Group and by employee to arbitrate differences provide consideration for each other. UnitedHealth Group's payment of the filing fee in excess of $25 for employee also constitutes

000049

consideration for this Policy. Employee's employment by UnitedHealth Group constitutes additional consideration.

Employee and UnitedHealth Group understand and agree that through this agreement, UnitedHealth Group and employee give up their respective rights to a court or jury trial and that, pursuant to the terms of this Policy, UnitedHealth Group and employee are agreeing to arbitrate claims covered by this Policy.

This Policy supersedes any and all prior versions and has been revised effective January 1, 2016.

---

[1] Throughout this Policy, the term "employee" includes both current and former employees of UnitedHealth Group.

**DAVID SMITH**

**Date Received:** 08/02/2016

**Thank You. Your acknowledgement has been captured. No further action is needed.**

000050