UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPTUM, INC. and<br>OPTUM SERVICES, INC.,<br><br>        *Plaintiffs*,<br><br>v.<br><br>DAVID WILLIAM SMITH,<br><br>        *Defendant*. | Civil Action No.: 19-cv-10101 |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

By his Motion to Compel Arbitration and supporting Memorandum (the "Motion" and "Memo," respectively Dkt. Nos. 16 & 17), Defendant David William Smith ("Smith") has manufactured an arbitrability issue in an attempt to evade the Court's authority and thereby render moot Plaintiffs' emergency request for temporary relief. Smith mischaracterizes Plaintiffs' position and ignores the plain language of the Parties' arbitration agreement (the "Policy"), which states in relevant part:

> In addition, this Policy does not preclude either an employee or UnitedHealth Group from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable law. However, ***after*** the court has issued a ruling concerning the emergency or temporary injunctive relief, the employee and UnitedHealth Group are required to submit the dispute to arbitration pursuant to this Policy.

Policy, § B (emphasis added).[1]

Under the Policy, Plaintiffs are entitled – as they have done – to seek emergency or temporary injunctive relief in this Court, and the mandate to arbitrate does not attach until ***after*** the Court has ruled on their motions. For this reason, this case is distinguishable from

---

[1] The Policy is attached to Defendant's Memo as Exhibit 1. The Policy defines UnitedHealth Group ("UHG") to include its subsidiaries and affiliates, including Plaintiffs.

1

Defendant's cited authority, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___, No. 17-1272, 2019 WL 122164 (U.S. Jan. 8, 2019), which addresses the narrow issue of arbitrability. Moreover, Defendant's argument disregards the First Circuit's controlling decision in *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir. 1986), and its progeny, which Defendant acknowledges has not been abrogated by *Schein* and which expressly authorizes this Court to provide interim relief to preserve the *status quo* until Plaintiffs can obtain such relief through arbitration.

Accordingly, the Court should deny Defendant's Motion at this early stage.

1. **There is no issue of arbitrability.**

    Smith's Memo is correct that the Policy covers the claims in Plaintiffs' Complaint. *See* Policy, § B ("Scope of Policy," covering trade secrets and breach of contract/covenant claims). But that does not mean the matter should be compelled to arbitration now. The issue is not a matter of ***if the claims are subject to arbitration*** but of ***when***, and the Policy is clear on the latter point – "***after*** the court has issued a ruling concerning the emergency or temporary injunctive relief, the employee and UnitedHealth Group are required to submit the dispute to arbitration pursuant to this Policy." *Id.* (emphasis added). Accordingly, Plaintiffs do not dispute that, if the case continues past the interim injunctive relief stage, they may be compelled to adjudicate their claims against Smith through arbitration. The Policy, however, does not preclude them from seeking preliminary judicial relief in the meantime. *Id.* Defendant's argument that "the Complaint must be [ultimately] resolved through arbitration" is therefore a red herring and should be disregarded as such. *See* Memo, § II(A).

2. **The Policy expressly allows Plaintiffs to seek injunctive relief in court, and does not prevent the Court from granting the relief sought here.**

    Under the Policy, Plaintiffs are expressly authorized to seek "emergency or temporary injunctive relief in a court of law" before submitting their claims to arbitration. Policy, § B. The

Policy recognizes that the ability to seek preliminary relief in court is paramount, stating that the Policy **"does not preclude"** either UHG or its employees from exercising this right. *Id.* (emphasis added). The purpose of this language is to allow any party to preserve the *status quo* until an arbitrator is positioned to provide further relief. As the First Circuit has recognized:

> We believe this approach reinforces rather than detracts from the policy of the [Federal] Arbitration Act, which was most recently described by the Supreme Court in *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985): "passage of the Act was motivated first and foremost by a Congressional desire to enforce [arbitration] agreements into which parties had entered." 470 U.S. at ___, 105 S.Ct. at 1242. We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process.

*Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986) (internal footnotes omitted). The First Circuit's reasoning applies to the instant case – if Plaintiffs are denied immediate, judicial relief preventing the misappropriation of their trade secrets and, relatedly, the further violation of their time-limited restrictive covenants, they will have no mechanism for preserving the *status quo* while the Parties initiate arbitration (a process that can take months). This outcome – which Defendant encourages[2] – would defy both the language and intent of the Policy, as well as the congressional intent behind the Federal Arbitration Act (FAA).[3]

Indeed, Plaintiffs' Motion for Temporary Restraining Order (Dkt. No. 3) is narrowly tailored to preserve the *status quo* prior to arbitration. It asks the Court to: (1) enjoin Smith

---

[2] Defendant variously argues that the Policy "only permits an order compelling arbitration with all other matters to be resolved by the arbitrator," the Policy only allows Plaintiffs to initiate a "judicial action to enforce the arbitration commitment itself," and "[t]his Court's function is only to compel Plaintiffs to arbitrate as they have promised." Memo, pp. 4, 7, 8. These interpretations are belied by the language and intent of the Policy and, further, would only frustrate the Parties' ability to engage in a meaningful arbitration.

[3] The Policy states that "The Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern this Policy." Policy, § A ("Statement of Intent"). The congressional intent behind the FAA must therefore be read into the Policy itself.

from working for a competitor (ABC) until a request for further preliminary relief has been decided (or, alternatively, until Plaintiffs have had an informed opportunity to determine that a preliminary injunction is not needed); (2) enjoin Smith from using or disclosing Plaintiffs' trade secrets, as he is already obligated to do under state and federal trade secrets law; (3) require Smith to return Plaintiffs' property and information; (4) require Smith to provide an affirmation to that effect; and (5) require Smith to comply with his nonsolicitation restrictions. *See* Proposed Temporary Restraining Order (Dkt. No. 3-1). These limited requests are designed to prevent any further harm to Plaintiffs while the Parties commence arbitration.

Similarly, Plaintiffs' Motion for Limited Expedited Discovery (Dkt. No. 5) merely seeks to enable Plaintiffs to evaluate what Smith will be doing at ABC, the extent to which such employment poses a threat to Plaintiffs' information, and whether and to what extent Smith's employment threatens Plaintiffs' talent pool. *See, e.g.*, Plaintiffs' Motion for Limited Expedited Discovery, Ex. 1 (Plaintiffs' proposed document requests to Smith, Dkt. No. 5-1). This information, which Defendant and ABC have refused to provide to date, is essential in determining whether further emergency relief is necessary.

The type of relief that the Court may provide in this regard has not been clearly and unmistakably delegated to an arbitrator – rather it has been expressly reserved for the Court's decision. Defendant's interpretation of the Policy – that the issue of "whether the Policy even permits Plaintiffs to seek temporary injunctive relief (and what relief, if any, is permissible)" is for the arbitrator to decide – would render the Policy's exception clause (preserving the right to seek emergency relief in court) meaningless and gut the Court's equitable powers. *See* Memo, p. 8. This inconsistent reading of the Policy cannot be endorsed. *See, e.g.*, *Demers Bros. Trucking, Inc. v. Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. SRS IM MA 04-124*, 600 F. Supp. 2d 265,

4

278 (D. Mass. 2009) ("When scrutinizing a contract, a court should interpret broad contract language so as to avoid absurd results. Massachusetts law disfavors contract interpretations that make some provision of the contract useless or inexplicable.") (internal quotations and footnotes omitted).

Further, the Policy does not – as Defendant contends – relegate all discovery issues to arbitration. The language to which Defendant points for this position is couched under Section D of the Policy, titled "Arbitration Rules and Procedures." *See* Memo, pp. 3, 6-7. Section D, however, does not govern Plaintiffs' right to emergency or temporary relief in court. Rather, Section D merely does what it sets out to do – provides rules and procedures for the arbitration process. *See* Policy, § D (governing how the arbitration shall be initiated, the appointment of a neutral, confidentiality of arbitration proceedings, etc.). The Policy has no bearing on what relief the Court is and is not allowed to provide.

**3.** ***Schein* does not preclude the Court from granting interim relief while the Parties proceed to arbitration.**

Defendant contends that the recent U.S. Supreme Court decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___, No. 17-1272, 2019 WL 122164 (U.S. Jan. 8, 2019), places a "lock on judicial involvement where a delegation clause exists" and argues that, as a result, this Court has no power to rule on Plaintiffs' emergency motions "[u]nless and until the arbitrator concludes that he or she has no jurisdiction to control discovery or to resolve requested interim relief . . . ." Memo at 8-9. Defendant's reliance on *Schein* misses the mark.

In *Schein*, the Supreme Court considered the narrow question of "whether the 'wholly groundless exception' is consistent with the Federal Arbitration Act" and concluded that "it is not." 2019 WL 122164, *2. *Schein* does *not* address the question presented here – whether a party to a contract may entreat a court for interim injunctive relief where the language of the arbitration agreement expressly preserves the party's right to do so. Further, as *Teradyne* – the

controlling case on this issue in the First Circuit – and its progeny make clear, **even absent an operative exception clause**, the Court may grant preliminary injunctive relief in order to maintain the *status quo* pending arbitration. 797 F.2d 43 at 51; *see also Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 69 (1st Cir. 2010) ("It remains true . . . that even where preliminary relief is for the arbitrator, a district court retains power to grant an *interim* preliminary injunction, where otherwise justified, for the interval needed to resort to the arbitrator--that is, for the period between the time the district court orders arbitration and the time the arbitrator is set up and able to offer interim relief itself. *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986).").

> As this Court recently observed:
>
> In the First Circuit, a district court may grant a party's request for injunctive relief where there is "an arbitrable dispute pending arbitration, provided that the prerequisites for injunctive relief are satisfied." *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986); *see also Danieli & C. Officine Meccaniche S.p.A. v. Morgan Constr. Co.*, 190 F.Supp.2d 148, 154 (D. Mass. 2002) (Gorton, J.). Further, a district court may grant a preliminary injunction **before determining whether a dispute requires judicial or arbitral action**. *Teradyne*, 797 F.2d at 51. Allowing courts to provide such relief permits the "preserv[ation of] the status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process." *Id.*

*CellInfo, LLC v. American Tower Corporation*, No. 18-11250-WGY, 2018 WL 6682798 (D. Mass. Dec. 12, 2018) (Young, J.) (emphasis added, internal footnotes omitted) (finding that, even where it was for the arbitrator to decide issues of contract interpretation, the Court was empowered to grant a preliminary injunction pending arbitration); *see also Danieli & C. Officine Meccaniche S.p.A.,* 190 F. Supp. 2d at 154 ("Notwithstanding the arbitrability of the parties' dispute, this Court has the authority to grant preliminary injunctive relief to preserve the status quo pending arbitration provided the prerequisites for injunctive relief are met.") (citing *Teradyne*, 797 F.2d at 51).

Accordingly, *Teradyne Inc.* and its progeny specifically allow the District Court to grant interim relief in order to maintain the *status quo*. *Schein* does not abrogate *Teradyne* and may only be cited for the narrow rule that, where an arbitration agreement contains a clause delegating the issue of arbitrability to the arbitrator, courts have no authority to decide the issue for themselves. Rather, "[u]nder the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Schein*, 2019 WL 122164, at *3 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772 (2010)). That is exactly what Plaintiffs are asking this Court to do – enforce the Policy according to its terms so that Plaintiffs can proceed to a meaningful arbitration. And, as this Court has held, "[t]he principle underlying the authority of a district court to preserve the status quo pending arbitration is the moving party's right to retain its remedies during such proceedings." *Danieli & C. Officine Meccaniche S.p.A.*, 190 F. Supp. 2d at 155 (citing *Teradyne*, 797 F.2d at 51). Accordingly, the limited relief Plaintiffs seek does not tread into the territory of *Schein* but, rather, is necessary to effectuate the Policy agreed to by both Parties and to preserve Plaintiffs' remedy.

While Defendant attempts to broadly apply select concepts from *Schein*, it attempts to distinguish *Teradyne* on a narrow set of facts. In his Supplemental Response (Dkt. No. 27), Defendant argues: "Importantly, the parties in *Teradyne* did not dispute the court's authority to resolve any gateway questions. Indeed, *Teradyne* contains no analysis of that issue and has no mention whatsoever of the court's role when the parties have delimited what relief should be provided by the court and what by arbitrator . . . ." Supplemental Response, p. 2. Defendant's analysis in this regard is inapplicable. Plaintiffs agree that their claims are arbitrable. But the Policy first confers authority on the Court to decide Plaintiffs' emergency request for temporary relief, and does not delegate that decision to the arbitrator. The arbitration mandate in the Policy

does not attach until *after* an application for emergency relief is ruled upon. That has not happened yet.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant David William Smith's Motion to Compel Arbitration (Dkt. No. 16) at this early juncture.

Respectfully submitted,

OPTUM, INC. and
OPTUM SERVICES, INC.,

By their attorneys,

*/s/ Stephen D. Riden*
Russell Beck, BBO No. 561031
Stephen D. Riden, BBO No. 644451
Hannah Joseph, BBO No. 688132
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
617.500.8660 Telephone
617.500.8665 Facsimile
*rbeck@beckreed.com*
*sriden@beckreed.com*
Dated: January 25, 2019 *hjoseph@beckreed.com*

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the CM/ECF system on January 25, 2019, and will be served electronically to the registered participants as identified on the Notice of Electronic Filing through the Court's transmission facilities, and that non-registered participants have been served this day by mail.

*/s/ Stephen D. Riden*