# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

OPTUM, INC. and
OPTUM SERVICES, INC.,

*Plaintiffs*,

v.

DAVID WILLIAM SMITH,

*Defendant*.

Civil Action No.: 19-cv-10101

## PLAINTIFFS' FURTHER OPPOSITION TO DEFENDANT'S
## MOTION TO STAY PROCEEDINGS

Defendant David Smith has moved to stay all further proceedings in this case pending his premature appeal on the issue of this Court's ability to rule on Plaintiffs' Motion for Temporary Restraining Order (Dkt. No. 3) under *Henry Schein, Inc. et al v. Archer and White Sales, Inc.*, 586 U.S. ___, No. 17-1272, 2019 WL 122164 (Jan. 8, 2019).  *See* Defendant's Motion to Stay Proceedings (the "Motion to Stay," Dkt. No. 39).  In his January 30, 2019 Motion to Stay, Defendant argues that this Court has already denied his Motion to Compel Arbitration (Dkt. No. 16) and his "oral motion" to stay the proceedings (this Court, during oral argument, described this contention as "erroneous").[1]  On the following day (at 12:05 a.m.), Defendant filed a Notice of Appeal "from an order denying Defendant's Motion to Compel Arbitration (Dkt. No. 16) entered in this action on January 30, 2019."  *See* Notice of Appeal (Dkt. No. 43).  Plaintiffs have opposed the Motion to Stay.  *See* Plaintiffs' Opposition to Defendant's Motion to Stay

---

[1] Defendant's oral request failed to comply with L.R. 7.1 as it was neither accompanied by a supporting memorandum of authorities, nor offered up to Plaintiffs for conference.  Additionally, the Court has not denied Defendant's Motion to Compel Arbitration.  Indeed, both Parties have agreed to proceed to arbitration on this matter.  The issue is whether this Court may issue interim relief *prior* to arbitration, as requested by Plaintiffs.

Proceedings (the "Opposition," Dkt. No. 44).[2]  Plaintiffs hereby submit this Further Opposition to Defendant's Motion to Stay pursuant to the Court's January 31 Order (Dkt. No. 45).

## I.    INTRODUCTION

Defendant fails several times over in attempting to manufacture a divestiture of this Court's jurisdiction to decide whether to grant a temporary restraining order.  In the first place, the Court has not denied Defendant's Motion to Compel Arbitration in any way, whether in whole or in part.  Even if it had, it has not yet reduced any such denial to an appealable order.  The appeal is therefore premature and does not divest this Court of jurisdiction.

In addition, the appeal itself is frivolous.  For one, the Parties' arbitration agreement (the "Arbitration Policy") could not be more clear that a party is permitted to seek emergency relief in court, as Plaintiffs did here.  Even if the Arbitration Policy were not so clear, this Court has inherent authority under controlling First Circuit law to enter an order freezing the status quo before sending the case to arbitration.  *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986).  Defendant has also waived his right to appeal the Court's decision to continue TRO proceedings.  Defendant could have sought a stay earlier, as an alternative remedy in his Motion to Compel Arbitration (filed more than a week ago), but instead waited until the middle of the proceedings to contend that the mere *convening* of a TRO hearing denied the motion to compel arbitration "in part."  That was far too late in the day to contend, for the first time, that proceeding with the hearing itself constituted a denial of his Motion to Compel Arbitration.  Compounding that waiver, *after* Defendant moved to compel arbitration and *after* he requested a stay of the proceedings, defense counsel "urge[d]" the Court to hear testimony from the Defendant himself in response to Plaintiffs' Motion for Temporary Restraining Order (and thereafter, based on defense counsel's urging, Defendant proceeded to testify), rendering any

---

[2]  Plaintiffs incorporate their Opposition and their Response to Defendant's Motion to Compel Arbitration (Dkt. No. 35) in full as if set forth herein.

asserted error an invited one.[3]

Defendant's arguments in support of a stay are equally meritless. As already explained, the appeal is premature, leaving intact the Court's ordinary authority to decide whether to grant a stay. The appeal is also plainly interlocutory, and such appeals generally do not stay further proceedings unless ordered by a district court or court of appeals. To be sure, the question whether a district court should stay proceedings pending an appeal of the denial of a motion to compel has divided federal courts, but the better rule is that a district court is not categorically required to stay all proceedings pending an arbitrability appeal. Any such stay should, at most, be limited to the kinds of activities, like substantial discovery, that might frustrate the Federal Arbitration Act (FAA). Issuance of an order granting a TRO is nothing like that, and promotes rather than frustrates the goals of the FAA.

Perhaps most fundamentally, since the Court has not yet *decided* whether to enter a TRO, that question is not "involved in" the Defendant's Notice of Appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Instead, that Notice of Appeal challenges only Defendant's (waived) position that the Court effectively denied his Motion to Compel Arbitration by continuing TRO proceedings. The Court thus retains jurisdiction to decide *whether to grant* a TRO. If the Court grants a TRO, Defendants may then appeal that decision.

Finally, applying the ordinary stay factors here, this Court should deny Defendant's Motion to Stay or, alternatively, attach conditions to that stay so to avoid irreparable harm to Plaintiffs while the appeal is pending. Those conditions are well within the Court's authority.

## II.    DISCUSSION

### A.    *Question 1*:  Does Defendant's Notice of Appeal Require the Court to Stay the Proceedings?

---

[3] Plaintiffs, for their part, indicated that they were amenable to a process that would have had the Court decide their Motion for Temporary Restraining Order without live testimony.

*Short Answer*:  **No**

This Court's first question raises two threshold issues:

### 1.   Defendant's Notice of Appeal is Ineffective

First, and as discussed in Plaintiffs' Opposition, Defendant prematurely filed his Notice

of Appeal.[4]  As the Court has stated, the Court has not denied Defendant's Motion to Stay or his

Motion to Compel Arbitration.  Indeed, the Court stated that it is likely to *grant* Defendant's

Motion to Compel Arbitration if the parties do not simply agree to arbitrate themselves.

Defendant insists that the Court denied his Motion to Stay "in part" by conducting the

TRO proceedings.  That argument proves too much.  If it were correct, then a party could file a

motion to compel arbitration "today," and then file a notice of appeal the very next day on the

purported grounds that the mere passage of time resulted in a denial "in part" of the motion.  In

addition, 9 U.S.C. § 16 only creates a right of appeal for orders "denying an application" to

compel arbitration.  The Court has not denied Defendant's "application" to compel arbitration.

The Court's narrower decision to conduct a TRO hearing is not even appealable under 9 U.S.C. §

16.

Second, a notice of appeal must await entry of an order.  As Rule 4(a)(1)(A) provides,

"the notice of appeal . . . must be filed with the district clerk within 30 days *after* entry of the

judgment or order appealed from."  (Emphasis added.)  If a notice is filed before entry of the

order – even if filed after the Court announces its decision – it is ineffective until the date the

---

[4]  It bears mention that Defendant's position is in part grounded on his separate, also mistaken, argument that Plaintiffs' TRO motion "improperly seeks a preliminary injunction" insofar as the Arbitration Policy permits only "emergency or **temporary injunctive relief**" which, he contends, is not a preliminary injunction.  (Def.'s Mem. of Law in Supp. of Def.'s Mot. to Compel Arbitration, Dkt. No. 17, at 7) (emphasis in original).  Defendant's argument is pure semantics.  Putting aside that Plaintiffs have not yet sought a preliminary injunction, many jurisdictions – including, significantly, Plaintiffs' home state of Minnesota – refer to preliminary injunctions as "temporary injunctions."  *See* Minn. R. Civ. P. 65(b). Accordingly, under the unambiguous language of the Arbitration Policy, the Court is not limited to issuing only a TRO, but may proceed to a preliminary injunction if the Court deems it warranted.

Court enters its order.  Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.")  That too has not yet happened.  *See, e.g.*, *Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410, 414 (1st Cir. 1998) (a "notice of appeal, filed after district court entered order granting in part plaintiff's motion seeking judgment in accordance with stipulation, but before judgment had been entered, would be treated as filed on the date of and after the entry of judgment"); *see also Katerinos v. U.S. Dep't of Treasury*, 368 F.3d 733, 737 (7th Cir. 2004) ("Under the Federal Rules of Appellate Procedure, a timely motion under Rule 59(e) suspends the time for appealing, and a notice of appeal filed while such a motion is pending is premature . . . ***this court*** lacks jurisdiction to entertain this appeal until the district court has ruled on Mr. Katerinos's motion.") (citing Fed. R. App. P. 4(a)(4)(B)(i)) (emphasis added).

## 2.      Defendant's Notice of Appeal is Frivolous

Defendant's appeal of this Court's purported denial of Defendant's Motion to Compel Arbitration is frivolous and does not divest the Court of jurisdiction to consider Plaintiffs' request for temporary injunctive relief.  "Under well-settled law, courts entertaining a motion for stay are compelled to evaluate the merits of the petition and anticipate its disposition on appeal." *See Acevedo–Garcia v. Vera–Monroig*, 296 F.3d 13, 16 (1st Cir. 2002) ("The sine qua non [of the stay pending appeal standard] is whether the movants are likely to succeed on the merits.") (internal quotations omitted).  Where, as here, a notice of appeal is patently meritless, it fails to divest the district court of jurisdiction. *Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 95 (1st Cir. 2003).  Accordingly, "a district court can proceed, notwithstanding the filing of an appeal, if the notice of appeal is defective in some substantial and easily discernible way . . . or if it otherwise

constitutes a transparently frivolous attempt to impede the progress of the case." *United States v. Brooks*, 145 F.3d 446, 456 (1st Cir. 1998).

Defendant's Notice of Appeal suffers from both deficiencies. First, as stated above, this Court has not ruled on Defendant's Motion to Compel Arbitration. Second, it is also a frivolous attempt to impede the progress of this case. It is clear from the plain language of the Arbitration Policy that this Court is empowered to decide issues regarding temporary injunctive relief ***prior to*** submission to arbitration. Defendant's contrary reading defies the rules of plain English and does not open the door to an interpretational issue. The Arbitration Policy could not be more clear that this Court has authority to grant emergency relief, and *Schein* confirms that courts should enforce contracts as written. *See* Plaintiffs' Response to Defendant's Motion to Compel Arbitration (Dkt. No. 35).

Defendant's reading also defies common sense. The obvious purpose of the Arbitration Policy's exception clause is to permit rapid relief in court to preserve the status quo. Yet under Defendant's view, a party must commence arbitration, get the arbitrator to agree to the unassailable principle that the clause permits a court to grant emergency relief, and then commence litigation in court. That tortured result would render utterly pointless the provision authorizing courts to grant emergency relief. Nothing in *Schein* requires that result. *See id.*

Third, Defendant has waived his claim that the Court erred merely by commencing TRO proceedings. Defendant filed his Motion to Compel Arbitration on January 22. At the same time, anticipating the foreseeable, Defendant easily could have requested that, if the Court denied his Motion to Compel Arbitration, it should immediately stay the TRO proceedings pending appeal. Defendant made no such request. Instead, Defendant arrived to Court – to a hearing convened to address *all* motions – repared to oppose Plaintiffs' Motion for Temporary Restraining Order. He only filed his Motion to Stay ***after*** the first day of the evidentiary hearing.

What is worse, Defendant's counsel also "urged" the Court to hear from Smith, who then testified for several hours.[5]  Defendant has therefore waived any objection to the Court's handling of the TRO and, indeed, has invited that asserted error.  Defendant's tactics underscore the frivolity of his appeal.

Defendant's appeal of an order that has not yet even been issued by the Court is a blatantly transparent attempt to delay the progress of this case and to inflict serious harm to Plaintiffs' interests and rights as a result.  Defendant's appeal is therefore entirely without merit.  In the face of a frivolous appeal, this Court need not grapple with jurisdictional issues.  It is free to, and should, rule on Plaintiffs' Motion for Temporary Restraining Order.

### 3.     Defendant's Notice of Appeal Does Not Require the Court to Stay the Proceedings

Even if the Court finds that Defendant's purported appeal is neither premature nor frivolous, it may rule on Plaintiff's Motion for Temporary Restraining Order.  Defendant's Notice of Appeal does not automatically stay proceedings before this Court; nor does it require the Court to stay the proceedings.

Interlocutory appeals generally do not require a district court to stay proceedings. The federal statute that prescribes the appealability of most "interlocutory decisions" makes clear that such appeals "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).  And, as a general rule, "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*."  *Griggs*, 459 U.S. at 58.

The circuits are split on how to interpret *Griggs* in the context of arbitrability appeals. The FAA does not expressly state whether district courts should stay proceedings pending

---

[5]  It bears note Defendant waited to file his Notice of Appeal until after he concluded his testimony.

resolution of an appeal of an order denying a motion to compel arbitration.  Some circuits, including the Third, Fourth, Seventh, Tenth, and Eleventh Circuits, have held that a notice of appeal automatically stays virtually all proceedings in the district court.  *See, e.g.*, *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011) (discussing the circuit split). "These courts analogize arbitrability appeals to appeals regarding double jeopardy, sovereign immunity, and qualified immunity, . . . reasoning that because a district court cannot proceed past these issues when there are interlocutory appeals, it similarly cannot proceed when arbitrability is appealed." *Id.*  The Second, Fifth, and Ninth Circuits, by contrast, have read *Griggs* more narrowly, holding that a stay is not automatic and "an issue in the district court is only an 'aspect[ ] of the case involved in the appeal' if the appeal and the claims before the district court address the same legal question." *Id.* at 907, 909.  As the Ninth Circuit in *Britton* held, a broader reading would allow litigants to delay resolution of a matter by (as has been done here) filing frivolous appeals.  *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990).  The *Britton* court therefore held that, in absence of an automatic stay, the district court retains the power to determine, on a case-by-case basis, whether cases should be stayed pending an arbitrability appeal.  *Id.*

The First Circuit has not decided the issue and, absent controlling or illustrative precedent mandating this Court to relinquish all jurisdiction over the proceedings, it should not read *Griggs* to deny Plaintiffs their only opportunity to preserve the status quo ***and their trade secrets***.  After all, although permitted by statute, an appeal of an order denying a motion to compel arbitration is still interlocutory, and federal law generally does not require district courts to stay proceedings pending resolution of an interlocutory appeal.  *See* 28 U.S.C. § 1292(b).  In addition, a motion to compel arbitration is not like a motion asserting a privilege or an immunity.  The latter requires a categorical stay in order to preserve the value of the privilege or immunity itself.  By contrast,

there are actions a district court can and should take pending the resolution of an appeal of an order denying a motion to compel arbitration that do not gut the value of the motion to compel itself.  As explained further below, a TRO is just such a motion.

For these reasons, the two district court cases that Defendant cites in his memorandum in support of his Motion to Stay are easily distinguishable from this case insofar as they dealt with motions to stay discovery.  In *Integen N.V. v. Grina*, No. Civ. A 01-11774-REK, 2003 WL 1562200, at *2 (D. Mass. Feb. 21, 2003), this Court granted defendants' motion to stay proceedings pending appeal, finding – among other things – that continued discovery could deprive the defendants the benefits of arbitration.  The Court also found, however, that, "in some circumstances, limited discovery in district court might be appropriate."  *Id.* at *3.  The Court also stated that it might retain jurisdiction on other aspects of the case, including motions for attorneys' fees, actions in aid of execution of judgment, and orders relating to procedures in aid of appeal.  *Id.*  In *Combined Energies v. CCI, Inc.*, 495 F. Supp. 2d 142 (D. Me. 2007), the district court similarly declined to retain jurisdiction over matters of discovery.

Accordingly, although a district court may sometimes refrain from permitting extensive discovery during the pendency of an appeal denying a motion to compel arbitration, a temporary restraining order is different.  It is fleeting in nature – there is no risk of double jeopardy or inconsistent results between proceeding in arbitration and court.  Nor is there any concern that permitting ongoing proceedings during the appeal will frustrate the FAA.  On the contrary, as the First Circuit explained in *Teradyne*, entering an order freezing the status quo promotes the FAA by helping to ensure a meaningful arbitration process and preserving the remedy.

In addition, as articulated in *Britton*, Defendant should not be permitted to use procedural tactics simply in order to delay the inevitable – whether this issue goes through appellate review,

remanded back to district court, and/or referred to arbitration, the TRO issue will ultimately be before this Court.  *See* Plaintiffs' Response to Defendant's Motion to Compel Arbitration.

Finally, the Court's authority to enter a TRO is not "involved in" Defendant's Notice of Appeal.  *See Griggs*, 459 U.S. at 58 (1982).  Defendant filed his Notice of Appeal ***before*** the Court ruled on the TRO, so the latter necessarily cannot be encompassed by the former.  The only thing encompassed by the Notice of Appeal is whether the Court has ***already*** erred by conducting a TRO hearing before fully resolving the Motion to Compel Arbitration.  As already explained, Defendant has waived that issue.  Even if he had not, it would not bar the Court from deciding separately whether to enter a TRO.  If Defendant wants to appeal that potential ruling, they will have to wait until the Court makes that decision.

**B.**      ***Question 2*:  Does the Court have authority to impose conditions on the stay?**

**Short answer:  Yes.**

Even if the Court determines that a stay is appropriate in this case – which it should not, for the reasons set forth above – it is within the Court's authority under the All Writs Act, 28 U.S.C. § 1651(a), to place conditions on any stay that may be necessary pending appeal, as recognized by the Court during the January 31, 2019 hearing.  The All Writs Act specifically provides that courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); *see also United States v. BNS Inc.*, 858 F.2d 456, 461 (9th Cir. 1988) (district court had authority to issue an interim order to maintain status quo pending public interest review mandated by statute).

Courts have recognized that "writs" may include injunctions in aid of the court's jurisdiction and those to protect or effectuate its judgments.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe*, 868 F. Supp. 532, 535 (S.D.N.Y. 1994) (granting preliminary declaratory relief in the form of a status quo injunction, available under All Writs Act as relief which was

necessary in aid of federal district court's jurisdiction, in order to protect firm, pending decision by arbitration panel, from alleged misappropriation of its customer information); *Royal Ins. Co. of Am v. Quinn-L Capital Corp.*, 759 F. Supp. 1216, 1228 (N.D. Tex. 1990) ("The Court has the power to issue the injunction based on the All Writs Act.") (citing *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172-74 (1977)), *rev'd in part on other grounds*, 960 F.2d 1286 (5th Cir. 1992); *United States v. W. Pa. Sand & Gravel Ass'n*, 114 F. Supp. 158, 159 (W.D. Pa. 1953) (issuing a preliminary injunction against a corporation enjoining it from dissolution in order to maintain the court's jurisdiction of the corporation and to maintain the status quo pending final adjudication of the merits of an action pending before the court).  Specifically, federal district courts have "the power to issue such provisional equitable relief when it is necessary based on the urgency of the situation, the irreparable harm that would otherwise occur, and the remaining factors which courts consider when granting provisional injunctive relief."  *Merrill Lynch*, 868 F. Supp. at 535.

The standard applicable to preliminary injunctions applies to relief granted under the All Writ Act "because the consequences of declaring the legal rights of the parties — even though preliminarily — may well have immediate consequences which equity demands be taken into consideration." *Id.* at  536.  Consequently, to succeed on a motion for preliminary declaratory relief, the moving party must show substantial likelihood of success on the merits, that it will suffer irreparable injury, and that the balance of the equities tips in favor of granting it preliminary declaratory relief.  *Id.*

Accordingly, if the Court grants a stay, it should also issue a writ specifically permitting it to hear Plaintiff's Motion for a Temporary Restraining Order and to issue such injunctive relief as necessary.  Plaintiffs have demonstrated their ability to meet the injunctive relief standard in their Memorandum in Support of Motion for Temporary Restraining Order (Dkt. No. 4), and expressly incorporate by reference the arguments set forth in that briefing.  Indeed, such a writ is

especially warranted in this case, given Defendant's frivolous appeal and gamesmanship in his repeated attempts to prevent this Court from implementing the contract in which he and Optum specifically agreed that temporary injunctive relief may be granted by a court.

**C.**      ***Question 3*:  What, if any, conditions should be imposed upon Defendant if a motion to stay is granted?**

> **Short answer:  The Court should condition any stay on Defendant neither working for, nor communicating with, ABC or its representatives.**

### 1.  Should the *Hilton* Factors apply at this time?

As already explained, the FAA does not address whether or not a party is entitled to a motion to stay pending appeal of a denial of a motion to compel arbitration.  *C.B.S. Employees Federal Credit Union v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 716 F. Supp. 307, 309 (W.D. Tenn.1989).  Accordingly, Fed. R. Civ. P. 62 applies and this Court has authority to decide whether to grant a stay pending appeal.  In making that decision, the Court should be guided by the four-pronged test set forth in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1986); *Steiner v. Apple Computer, Inc.*, No. C 07-04486 SBA, 2008 WL 1925197, at * 2 (N.D. Cal. Apr. 29, 2008); *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 716 F. Supp. 307, 309 (W.D. Tenn. 1989).

### 2.  How would the *Hilton* Factors apply?

Defendant here falls well short of meeting the burden under the factors outlined in *Hilton v. Braunskill*:  (1) likelihood of success on the merits; (2) irreparable harm; (3) absence of substantial injury to other parties; and (4) public interest.  481 U.S. 770, 776 (1987).

> **(a)    Defendant has failed to show that he will be successful on the merits of his appeal.**

On a motion to stay pending appeal, a "movant need not necessarily show a 'probability of success on the merits; instead, the movant need only present a substantial case on the merits

when a serious legal question is involved.'" *Canterbury Liquors & Pantry v. Sullivan*, 999 F.

Supp. 144, 149 (D. Mass. 1998) (citing *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981)).  If,

however, the movant meets only this lower threshold showing of likelihood of success on the

merits, a district court has the discretion to grant a stay *only* if the other three *Hilton* factors

strongly favor interim relief.  *Steiner*, 2008 WL 1925197, at *3; *C.B.S.*, 716 F. Supp. at 309-10

(citing *Washington Area Transit Comm'n v. Holiday Tours*, Inc., 559 F.2d 841 (D.C. Cir.1977)).

As the Court has indicated, Defendant's contention that the Arbitration Policy delegates

all issues to the arbitrator, including the issue of injunctive relief despite the Arbitration Policy's

express provision to the contrary, is misplaced.  Optum is entitled – as it has done – to seek

temporary injunctive relief in this Court, as the mandate to arbitrate does not attach until ***after***

the Court has ruled on their motion, nor does it strip the Court of its inherent powers to issue

temporary injunctive relief to preserve and ensure the meaningfulness of the arbitration process.

(*See also* Optum's Response to Defendant's Motion to Compel Arbitration, Dkt. No. 35.)

Defendants are not basing their Motion to Stay on a "serious legal question."  Rather, they are

putting forth a frivolous appeal and engaging in stall tactics in an attempt to further forestall

Optum's relief.

> **(b)  Defendant will not suffer irreparable injury absent a stay of the Court's issuance of the temporary restraining order pending his appeal.**

Defendant will not suffer irreparable harm.  To the contrary, the Court's denial of

Defendant's Motion to Stay will simply require Defendant to honor the agreements he willingly

entered into and for which he was substantially compensated.

In particular, Defendant will not suffer harm to his privacy if the existing proceedings,

which are already public, are completed.  Indeed, certain of Defendant's attorneys, who also

represent ABC, only sought to preclude the public from Wednesday's proceedings when

Defendant was describing his work at ABC, not when Optum was describing Defendant's

misappropriation of Optum's confidential information and trade secrets or when Defendant testified about details of his personal life, including his finances.  Accordingly, Defendant's purported concern about confidentiality rings hollow.  His various machinations – including the drawn-out motion practice and filing an appeal that potentially raises a question of first impression in the First Circuit – belie any contention to the contrary.

Further, Defendant will suffer no harm whatsoever to his financial interests.  Defendant is not funding his own litigation (ABC is, as Smith admitted), and as Mr. Stoddard's testimony revealed, ABC intends to compensate Smith for any period in which he is required to refrain from working.  Defendant falls far short of his obligation under the Hilton factors to demonstrate that he will suffer irreparable harm.

### (c)   Optum will suffer irreparable harm if the proceedings are stayed.

Unlike Smith, Optum will suffer irreparable harm if the Court stays the proceedings and does not consider its motion for a Temporary Restraining Order.  Not only did Defendant agree as much in the Agreements, but his employment with ABC places Optum's confidential and trade secret information in grave, immediate risk of disclosure.  Defendant and ABC have amply demonstrated, through their legal gamesmanship and inconsistent testimony, that they cannot be relied upon through their word alone to protect Optum's interests during a stay.

Smith and ABC have implemented the Motion to Stay as a second chance at a free pass for their misconduct (the first being the motion to compel arbitration).  However, if it were the case that in every TRO proceeding in which the issue of arbitrability is touched upon in some way, Defendant could simply move to stay the proceedings, force the case into a lengthy appeal, and avoid the issuance of temporary relief from the District court, then the remedy of temporary relief from irreparable harm would, in essence, not longer be available for any Plaintiff in such circumstances.  In other words, as the 9th Circuit notes in *Britton v. Co-Op Banking Group,* if it

were not the case that the District court could issue such temporary relief from irreparable injury, "a defendant [could] stall a trial simply by bringing a frivolous motion to compel arbitration." 916 F.2d 1405, 1412 (9th Cir. 1990).

As this Court rightfully noted, there is no question that Smith was extensively exposed to confidential information during his employment with Optum.  Even Mr. Stoddard testified that he agrees Smith knows Optum's confidential information.  The longer that Smith is employed at ABC, the higher the risk to Optum's confidential and trade secret information.  Not only does each new day provide additional opportunities for Smith to rely upon or disclose Optum's confidential information, but as he becomes more deeply entrenched in his role with ABC, his risk of inevitable disclosure is substantially heightened.

Moreover, the testimony taken to date highlights the already significant risks of attempting to rely on Defendant to act scrupulously in protecting Optum's information.[6]  For example, Stoddard testified that ABC has made efforts to ensure that Optum's confidential information is not compromised by Smith's work for ABC, or relied upon by Smith in the course of his work for ABC.  Specifically, both Stoddard and Smith referenced that ABC instituted a so-

---

[6] Even if Defendant's conduct had been above board and he had been forthcoming and honest in his affidavit and testimony, the risks he poses are still too great to allow him to remain at ABC. This Court's decision in *Aspect Software, Inc. v. Barnett*, is particularly instructive, and the reasoning applies equally here:

> [G]iven the extent of [Smith's] experience at [Optum] and the similarity between his positions . . . it is difficult to conceive how all of the information stored in [Smith's] memory can be set aside as he applies himself to a competitor's business and its products.  On the contrary, what [Smith] knows about [Optum] is bound to influence what he does for [ABC], and to the extent it does, [Optum] will be disadvantaged. Other courts in this district, faced with similar circumstances, have concluded that even sincere, scrupulous efforts by an employee and his or her new employer to protect a prior employer's trade secrets are insufficient to remove the threat of irreparable harm via disclosure of trade secrets. . . .  Accordingly, . . . [Optum] has carried its burden of establishing a significant risk of irreparable harm absent preliminary injunctive relief.

*Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 130 (D. Mass. 2011) (quoting *Marcam Corp*, 885 F. Supp. at 297).

called "protocol" (which Smith called "guidelines") based on what Stoddard (and perhaps others) generally knows about Optum's work (based on public information), the general areas of Smith's focus at Optum, and what Smith himself specifically knows (on a confidential basis) about what he was doing for Optum.  This existence of this "protocol" or set of "guidelines" is Smith and ABC's primary support for Smith's argument that his work for ABC does not place Optum's trade secrets and other confidential information at risk.

In his papers, Smith provided scant information about ABC's "protocol."  For instance, in the December 28, 2018, letter from Attorney John Welsh responding to ABC's December 1, 2018, demand letter (Welsh Aff., Exh. 1; Dkt. No. 23-3), Mr. Smith's attorney described such guidelines as follows:

> To be sure, Mr. Smith will not use or disclose Optum confidential information, proprietary information or trade secrets. He will exclude himself from any conversation, meeting, assignment or other circumstance that would involve the use or disclosure of such Optum information.

The remaining discussion of any such guidelines appear in Stoddard's Aff., ¶¶ 20, 22-25. The only *specific* restriction set forth in Stoddard's affidavit is that that Smith would not analyze, compare, or evaluate Optum / UnitedHealth Group products or services this year.  *Id.*

What little was said about ABC's intentions to protect Optum's confidential information prior to Smith and Stoddard's testimony, was undermined by Smith and Stoddard's inability to provide any more substantive details about how the protocol is supposed to operate and how, if at all, it is enforced.  By all appearances, it seems that Smith's compliance with ABC's protocol is based on the honor system.  While Stoddard explained that there are areas where ABC is not putting Smith to work (*e.g.*, pharmacy benefit management), he admitted that there are no technological barriers preventing Smith from accessing data on ABC's computer systems related to those areas.  Except for the non-specific confidentiality acknowledgements signed by Smith in connection with his employment with ABC (Stoddard Aff., Exhs. 1 & 2), Stoddard was unable to

testify that ABC's protocol is even written down.  Further, and even more alarming, Stoddard admitted that not all of Smith's colleagues have been informed that Smith is not to be involved in various areas where he might be expected to use Optum's confidential information – leaving open the risk (and high likelihood, given the "collaborative" work environment Stoddard described in his testimony) – that others at ABC will speak with Smith about areas of his work for Optum.  Stoddard could not explain ABC's failure to communicate Mr. Smith's restrictions in this regard.  Further, Stoddard acknowledged that he does not believe that anyone from Optum was consulted to determine whether ABC's own protocol satisfied any of Optum's concerns about the exposure of its information, meaning that ABC is doing little more than making an educated guess on how best to protect Optum's trade secrets.  In sum, ABC would have this court believe that it's vague, unilateral, self-identified, poorly-communicated protocol is sufficient to protect Optum's interests.  Needless to say, Optum disagrees that ABC is the best authority to protect Optum's trade secrets, and, so long as Mr. Smith is working in this relatively small (20 employee) collaborative environment, no protocol – whether voluntary or court-ordered – will provide failsafe security of Optum's trade secrets and other confidential information.

Similarly, Smith's credibility was further undermined by his and Stoddard's conflicting testimony about the same meeting – testimony by Stoddard that reveals Smith's apparent effort to hide his reliance on Optum's confidential Factbook.  During Smith's testimony, he claimed that, during his October 29, 2018, interview with Stoddard at Starbucks, the conversation between Smith and Stoddard was just focused on high-level items, with Smith explaining the arc of his career and his background and family.  Specifically, Smith denied that, during the interview, they had detailed discussions about any particular topic or that he even asked what he would be doing at ABC – notwithstanding that Smith identified the job at ABC as a once-in-a-

lifetime opportunity.  Stoddard, for his part, testified that Smith did, in fact, ask what he would

be doing for ABC.  And, significantly, Stoddard testified that Smith spoke in great detail about

the "contours of the [healthcare] market" and that Smith was very articulate about this subject.

Comparing Stoddard's account of Smith's memorable description of trends in the healthcare

market to the topics addressed in Optum's Factbook – which Smith admittedly printed earlier

that morning – there is significant overlap between the two; indeed, Stoddard's account of his

conversation neatly tracks, almost point by point, the subjects of the Factbook.  Accordingly,

while Smith would have this Court believe that his interview with Stoddard was very general and

had nothing to do with general market trends, Stoddard's detailed account of this same interview

at Starbucks reveals that he had a conversation with an especially-informed applicant, and that

Smith's speaking points were entirely consistent with the description of forward-looking market

trends contained in the confidential Factbook.  Indeed, the list of topics provided by Stoddard

during his testimony essentially tracked the table of contents of the Factbook itself.  Given this

action's focus on Smith's printing of the Factbook earlier that day, Smith's omission of that line

of conversation from his otherwise detailed testimony about the interview appears to be

calculated to avoid revealing his reliance on the Factbook for his interview with Stoddard.

That Smith's shifting position, both in his oral and written testimony, about a subject that

is central to this Court's analysis – his handling of Optum's trade secrets and other confidential

information – demonstrates that Optum's concerns about the protection of its confidential

information and the potential for irreparable harm are well placed.

Yet another instance in which Smith's testimony lacked credibility was his explanation

about a primary focus of this action:  The undisputed fact that he printed two highly-confidential

documents on significant dates – the Factbook (printed on October 29, 2018 – the morning of his

interview with Stoddard) and the Optum Enterprise Strategy document (printed on December 10,

2018 – the day before he announced his resignation).  Smith shifted his testimony regarding this significant focus of the case before this Court's eyes.  Specifically, Smith was asked, several times, whether he printed each document on more than one occasion.  Each time, Smith testified that he printed the two documents multiple times, and tied his printing of those documents to his preference to review documents on paper, as opposed to a computer screen.  (Indeed, in his affidavit, Smith averred that he "again printed" the Optum Enterprise Strategy document on December 10, 2018.  Smith Aff., ¶ 25. Emphasis added.)  However, and significantly, once Optum's counsel questioned Smith about forensic evidence of Smith's print logs showing that he only printed each document one time apiece, Smith elided the issue.  And, instead of correcting his prior, repeated live and affidavit testimony, he merely shifted his explanation to match the forensics records, stating – after he was pressed – that he received earlier printed versions of the documents from someone else (he did not identify who provided such documents to him).

Smith also failed to testify honestly about his December 4 requests of three junior colleagues for information.  While Smith attempted to explain it away as the product of working in a collaborative environment – much like the collaborative environment at ABC – in which people share information and therefore his entreaties were nothing unusual, the three individuals did not see it that way, nor did Mr. Wolin, nor did Mr. Weissel.  Indeed, as Mr. Wolin testified, had he known on December 4 that Smith was thinking about leaving, he would likely have terminated Smith for trying to obtain that information.

Smith also refused to acknowledge that ABC was a competitor.  Even when presented with the August 27, 2018 email with the subject "Competitive Intelligence - OptumHealth" (Exhibit 2), that provided a "list of competitors" – including ABC, which he had himself put on the list – he continued to deny that ABC was a competitor, or that he ever thought it was a competitor.  Instead, he told the Court that despite being on the list of competitors, ABC was just

"a disruptor," which without explanation, he said is different from a competitor.  As Mr. Weissel

explained, however, this list was created specifically to identify key Optum competitors for

Optum's CEO, and ABC was one of them - and the fact that it was listed as a disrupter is

meaningless, it was specifically identified and discussed as a significant competitor.

Unless the Court considers Optum's motion for a temporary restraining order, Optum

may forever and irretrievably lose its trade secrets and the competitive advantage they provide.

Accordingly, the Court should exercise its inherent authority to grant relief preserving the status

quo ante in order to protect the rights of the party opposing a pending appeal – here, Optum.  *See*

*Kosilek v. Spencer*, No. CA 00-12455-MLW, 2012 WL 5240014, at *2 (D. Mass. Oct. 24, 2012)

(Wolf, J.) (issuing an injunction pending resolution of an appeal).

### (d)  Public interest weighs in favor of denying Defendant's motion to stay.

While this Court is required to consider the impact on the public interest, there is no

detrimental impact – and indeed there are positive public implications – for expediting the

resolution of issues concerning Defendant's breach of contract and misappropriation of trade

secrets.

### 3. What conditions should be imposed?

Under the All Writs Act, and as demonstrated by the application of the Hilton factors, the

Court should exercise its power to impose necessary and appropriate conditions on any stay.

Because the risk of irreparable harm to Optum is so high, because Smith's behavior leading up to

his resignation puts Optum's information at direct risk, and as a result of the above facts

demonstrating that Smith cannot be trusted and is not credible, the only restrictions that will

adequately protect Optum's trade secret information and preserve the status quo ante are

restrictions barring Smith from working for ABC and from communicating with ABC for the duration of the stay.

**Conclusion**

For the reasons set forth above and in their original Opposition, Plaintiffs respectfully requests that this Court deny Defendant's Motion to Stay Proceedings.  Alternatively, should the Court grant a stay, it should issue a writ specifically permitting it to retain jurisdiction over Plaintiff's Motion for a Temporary Restraining Order.

Dated:  February 1, 2019                    Respectfully submitted,

OPTUM, INC. and
OPTUM SERVICES, INC.,

By their attorneys,

*/s/ Russell Beck*
Russell Beck, BBO No. 561031
Stephen D. Riden, BBO No. 644451
Hannah Joseph, BBO No. 688132
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, Massachusetts  02110
617.500.8660 Telephone
617.500.8665 Facsimile
*rbeck@beckreed.com*
*sriden@beckreed.com*
*hjoseph@beckreed.com*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document has been filed through the CM/ECF system on February 1, 2019 and will be served electronically to the registered participants as identified on the Notice of Electronic Filing through the Court's transmission facilities, and that non-registered participants have been served this day by mail.

*/s/ Russell Beck*