UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPTUM, INC. and OPTUM SERVICES, Inc.,<br>    Plaintiffs,<br><br>    v.<br><br>DAVID WILLIAM SMITH,<br>    Defendant. | C.A. No. 19-10101-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                            February 5, 2019

This dispute arises out of defendant David William Smith's departure from his former employer, Optum, Inc. and Optum Services, Inc. ("Optum"),[1] a health services business, and his employment at a newly established firm, TCORP62018 LLC, which the parties refer to as "ABC." ABC is an independent health care venture established by Amazon, JPMorgan Chase & Co. and Berkshire Hathaway. In the complaint filed January 16, 2019, Optum alleges that Smith breached non-compete, nondisclosure, and non-solicitation covenants contained in stock and stock option awards that were part of his contract for employment with Optum. Optum also asserts that Smith misappropriated its trade secrets in violation of the

---

[1] Optum is a subsidiary of UnitedHealth Group.

Massachusetts Uniform Trade Secrets Act, M.G.L. c.93 §§42-42G, and the federal Defend Trade Secrets Act, 18 U.S.C. §1839(3).

On January 16, 2019, Optum also filed a motion for a temporary restraining order: "(1) prohibiting Smith from working for, or soliciting on behalf of, ABC so Optum may conduct expedited discovery so this Court can then hear and rule on a preliminary injunction motion; (2) barring Smith from using or disclosing Optum's trade secrets or other confidential information; and (3) requiring Smith to return Optum's property and information, including devices where such information was stored." Docket No. 4 at 2.

On January 22, 2019, Smith responded by filing a motion to compel arbitration immediately, asserting that all of the temporary relief Optum seeks is subject to arbitration, including the requests for a TRO and expedited discovery. Smith relies on an Employment Arbitration Policy that was also part of his contract for employment with Optum. See UnitedHealth Group Employment Arbitration Policy (Docket No. 17-1) (the "Arbitration Policy"). The court then ordered Smith to respond to the motion for a TRO and to address the implications of Teradyne Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986), in which the First Circuit held that the district court has authority to issue an injunction pending arbitration required by a contract.

2

On January 22, 2019, Smith responded to the motion for a TRO. On January 24, 2019, he submitted a memorandum addressing the implications of Teradyne. On January 25, 2019, Optum filed a response to Smith's motion to compel arbitration and a reply to his opposition to the motion for a TRO.

In response to Smith's request that the court compel arbitration immediately, rather than rule on Optum's motion for a TRO, Optum argues that the parties' contract authorizes it to seek, and the court to issue, a TRO maintaining the status quo before requiring that the dispute be submitted to arbitration. As explained below, this contention is correct.

The Arbitration Policy is a contract that requires covered claims to be resolved through binding arbitration. See Docket No. 25-1 at 2 of 8. It applies to, among other things, "claims for unfair competition and violations of trade secrets . . . ." Id. Therefore, Optum's claims that Smith is violating his contractual covenant not to compete, and his contractual and statutory duties not to disclose or misuse its confidential information, must be arbitrated. In addition, the Arbitration Policy provides that any dispute concerning "its interpretation" or "arbitrability" is a covered claim to be resolved by arbitration. Id.

However, the Arbitration Policy also states that:

> [T]his Policy does not preclude either an employee or [Optum] from seeking emergency or temporary injunctive relief in a court of law

3

> in accordance with applicable law. However, <u>after</u> the court has issued a ruling concerning the emergency or temporary injunctive relief, the employee and [Optum] are required to submit the dispute to arbitration pursuant to this Policy.

<u>Id.</u> at 3 of 8 (emphasis added).[2]

Smith began his employment with Optum in 2016 and, therefore, agreed to the Arbitration Policy as part of his employment contract. <u>Id.</u> at 2 of 8. As noted, that contract provided that Optum could request that a court issue temporary injunctive relief in accordance with applicable law before submitting the dispute to arbitration. The applicable law then included <u>Ortho Pharmaceutical Corp. v. Amgen, Inc.</u>, 882 F.2d 806 (3d. Cir. 1989). In 1989, relying on the First Circuit decision interpreting Massachusetts law in <u>Teradyne Inc. v. Mostek Corp.</u>, 797 F.2d 43, 51 (1st Cir. 1986), the Third Circuit in <u>Ortho Pharmaceutical Corp.</u> held that the Federal Arbitration Act authorizes courts to issue temporary injunctive relief because "'the congressional desire to enforce arbitration agreements would frequently be frustrated if the

---

[2] The Arbitration Policy does not address what law governs its interpretation. However, the stock and stock option awards that create Smith's contractual obligations not to engage in certain competition for one-year after leaving Optum and not to misappropriate its confidential information are governed by Delaware law. <u>See</u> e.g. Docket No. 1-1, ¶15. Therefore, the court is applying Delaware law in its instant analysis. There is, however, no material difference between the relevant Delaware and Massachusetts law. Accordingly, the court is citing both.

4

courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process.'" 882 F.2d at 812 (quoting Teradyne, 797 F.2d at 51).

More recently, the First Circuit has explained that "even where preliminary relief is for the arbitrator, a district court retains power to grant an interim preliminary injunction, where otherwise justified, for the interval needed to resort to the arbitrator -- that is, for the period between the time the district court orders arbitration and the time the arbitrator is set up and able to offer interim relief itself." Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 70 (1st Cir. 2010). The court expects that the Third Circuit would agree with the reasoning of Next Step as it agreed with the reasoning of Teradyne.

Therefore, both the express language of the Arbitration Policy, which is part of Smith's employment contract, and the applicable law it incorporates provide this court the authority to issue a temporary restraining order to maintain the status quo pending arbitration to assure that the arbitrator will have the ability to order the relief Optum seeks if persuaded that it is justified.

Nevertheless, Smith argues that the only injunction that the court can order pursuant to the Arbitration Policy is an order compelling arbitration. See Mem. in Supp. Def.'s Mot. to Compel

Arb. (Docket No. 17) at 7. He asserts that: this contention creates a dispute that requires "interpretation" of the contract; the Arbitration Policy requires that an arbitrator resolve any dispute concerning the "interpretation" of the contract and "arbitrability"; and, therefore, the court must at least order that the arbitrator resolve the dispute concerning whether the court has the authority to decide Optum's motion for a TRO. This argument is not meritorious.

The Arbitration Policy is not ambiguous. Smith's disagreement with the court's understanding of the plain meaning of the relevant language does not create an ambiguity. In the absence of an ambiguity there is no issue of interpretation to be decided by an arbitrator. Rather, the court must give effect to the plain meaning of the language at issue. See JFE Steel Corp. v. ICI Americas, Inc., 797 F. Supp. 2d 452, 469 (D. Del. 2011) (citing and applying Delaware law).

Under Delaware law, "clear and unambiguous language in a contract should be given its ordinary and usual meaning. Mere disagreement between the parties as to a contract's meaning does not render a contract ambiguous." CIF Licensing, LLC v. Agere Sys. LLC, C.A. No. 07-170-LPS, 2012 WL 6085368, at *4 (D. Del. Dec. 3, 2012) (quoting and citing Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195-96 (Del. 1992)). Under Delaware law, "[a]n ambiguous term is defined as a term susceptible

to two reasonable alternative interpretations." Falkenberg Capital Corp. v. Dakota Cellular, Inc., 925 F. Supp. 231, 236 (D. Del. 1996).[3]

The pertinent language in the Arbitration Policy is not susceptible to two reasonable alternative interpretations and, therefore, is not ambiguous. A court applying Delaware law must effectuate the unambiguous intent of the parties. See Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del. 2006); JFE Steel Corp., 797 F. Supp. 2d at 469. This principle means that in this case the court must find that there is no question of interpretation or arbitrability for an arbitrator to resolve. Rather, the court has the authority to decide Optum's motion for a TRO.

Contrary to Smith's contention, this conclusion is not undermined by the Supreme Court's recent decision in Henry Schein, Inc. et al. v. Archer and White Sales, Inc., No. 17-1272, 2019 WL 122164 (Jan. 8, 2019). Rather, it is reinforced by the reasoning of Schein.

---

[3] Massachusetts contract law is identical on this point. As the First Circuit has explained, under Massachusetts law: "A contract is not ambiguous simply because litigants disagree about its proper interpretation." Weiss v. DHL Exp., Inc., 718 F.3d 39, 44-45 (1st Cir. 2013) (citing FDIC v. Singh, 977 F.2d 18, 21 (1st Cir. 1992)). Rather, "[a]mbiguity arises only if the language is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Id. (citing S. Union Co. v. Dep't of Pub. Utils., 458 Mass. 812, 820 (2011)).

In Schein, the parties' contract provided for arbitration of any dispute except, among other things, actions seeking injunctive relief. Id. at *2. Plaintiff alleged violations of antitrust laws, and sought both money damages and injunctive relief. Id. Plaintiff also asserted that the contract delegated to the arbitrator the decision as to whether a dispute was arbitrable. Id. at *4. The Supreme Court held that a court may not override a contract even if it finds the argument that the dispute is arbitrable is "wholly groundless." Id. Rather, the Court wrote that "[w]e must interpret the [Federal Arbitration] Act as written and the Act in turn requires that we interpret the contract as written." Id. The Court added that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Id. (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The Court remanded the case for a determination of whether the contract at issue in fact delegated the arbitrability question to an arbitrator. Id. at 6.

In the instant case, in the Arbitration Policy the parties clearly and unmistakably agreed that a court would have the authority to issue temporary injunctive relief before compelling arbitration. As the Supreme Court emphasized in Schein, judges are "require[d] [to] interpret the contract as written." Id. at *4.

This requirement is a reiteration of the law concerning unambiguous contracts in Delaware and in Massachusetts as well.

It is particularly necessary and proper to give effect to Smith's employment contract as written in this case. At least seven Courts of Appeals, including the First Circuit and the Third Circuit, have held that a district court has the inherent equitable power to issue a preliminary injunction to preserve the status quo pending arbitration in order to protect the ability of the arbitrator to provide meaningful relief if the plaintiff prevails in the arbitration. See Teradyne, 797 F.2d at 51; Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1053 (2d Cir. 1990); Ortho Pharm. Corp., 882 F. 2d at 812; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1050 (4th Cir. 1985); Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1380 (6th Cir. 1995); Sauer-Getriebe KG v. White Hydraulics, Inc., 715 F.2d 348, 351 (7th Cir. 1983); Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 981 (9th Cir. 2010); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726, 726-28 (10th Cir. 1988);[4] cf. Peabody Coalsales Co. v. Tampa Elec. Co., 36 F.3d 46,

---

[4] In its leading case on this issue, the Tenth Circuit held that the district court had authority to issue injunctive relief to preserve the status quo pending arbitration. See Merrill Lynch v. Dutton, 844 F.2d at 728. The court relied primarily on the terms of the contract, but also cited Teradyne, 797 F.2d at 51, and some of its progeny. Id.

9

47-48 (8th Cir. 1994).[5] The Supreme Court was not presented with this issue in Schein. There is, however, no reason to expect that it would disagree with the nearly uniform view of the Courts of Appeal that have addressed this issue, particularly in this case in which the parties agreed in their contract that "applicable law" would apply to the granting of temporary injunctive relief.

In view of the foregoing, the court finds that Smith's employment contract provides it the authority and responsibility to decide whether temporary injunctive relief is justified before issuing an order compelling arbitration. To the limited extent that Smith argues otherwise, his motion to compel arbitration (Docket No. 16) is hereby DENIED, without prejudice to the issuance of an order compelling arbitration after the motion for a TRO is decided.

                                       /s/ Mark L. Wolf
                                       UNITED STATES DISTRICT JUDGE

---

[5] The Eighth Circuit has held that a district court may issue injunctive relief in an arbitrable dispute only if the contract contains language providing for such relief. See Peabody Coalsales Co., 36 F.3d at 47-48.