## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

OPTUM, INC. and
OPTUM SERVICES, INC.,

            *Plaintiffs*,

    v.

DAVID WILLIAM SMITH,

            *Defendant*.

Civil Action No.: 19-cv-10101

### OPTUM, INC. AND OPTUM SERVICES, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN INJUNCTION PENDING APPEAL AND/OR AN INDICATIVE RULING ON THE PENDING MOTION FOR A <u>TEMPORARY RESTRAINING ORDER</u>

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Optum, Inc. and Optum Services, Inc. (together, "Plaintiffs" or "Optum") respectfully move this Court for an injunction pending appeal, under Federal Rule of Civil Procedure 62(d), enjoining Defendant David William Smith from engaging in certain activities, as outlined in Optum's proposed injunction (attached to Plaintiffs' Motion for an Injunction Pending Appeal and/or an Indicative Ruling on the Pending Motion for a Temporary Restraining Order (the "Motion") as <u>Exhibit 1</u>). This Court's jurisdiction to grant the request – despite its February 5, 2019 Orders – is beyond dispute. Indeed, a request for this type of relief ***must*** be presented to this Court for decision in the first instance. *See* Fed. R. App. P. 8(a).

In addition (or in the alternative), Optum moves this Court for an indicative ruling under Federal Rule of Civil Procedure 62.1(a). *See also* Fed. R. App. P. 12.1(a). Issuing such a ruling would permit the court of appeals to remand the matter for the limited purpose of ruling on the pending motion for a temporary restraining order without losing jurisdiction over the pending appeal.

1.      As this Court knows, Optum sued Smith for breach of contract and misappropriation of trade secrets, alleging that Smith intends to deliver those secrets to one of Optum's competitors.  Optum agrees that its substantive claims are arbitrable under Smith's employment contract.  But Optum seeks to preserve the status quo pending arbitration by seeking a temporary restraining order (TRO) against Smith's allegedly unlawful conduct until such time as an arbitration forum can be convened and can itself rule on Optum's claims and request for injunctive relief.

Smith makes two threshold arguments in response.  First, he asserts that the arbitration agreement requires the arbitrator – not this Court – to decide whether this Court has the power to enter a TRO.  Dkt. # 17.  Second, he asserts that the arbitration agreement does not permit this Court to enter a TRO.  *Id.*  This Court rejected both arguments.  Dkt. # 48.  It found that the parties' contract unambiguously gives the Court the power to decide its own authority to enter a TRO.  The Court therefore denied Smith's motion to compel arbitration to that limited extent. The Court separately held that it has the power to enter a TRO, and indeed held an extensive evidentiary hearing on whether to do so.

During the evidentiary hearing, but before this Court ruled on the TRO request, Smith appealed from the denial of his motion to compel arbitration in part.  Dkt. # 43.  Recognizing a division of authority on the question, this Court anticipated that the First Circuit would hold that Smith's notice of appeal placed the entire case within the jurisdiction of the court of appeals – and therefore outside the jurisdiction of this Court.  On that basis, this Court held that, as a matter of law, it had no choice but to stay the proceedings unconditionally, including with respect to Optum's pending request for a TRO.  Dkt. # 49.

Accordingly, as things stand now, Optum cannot obtain temporary relief preventing irreparable harm until either the court of appeals dissolves the stay or an arbitrator can consider

Optum's claims, neither of which will happen nearly as quickly as the Court's decision to grant this Motion could.  Indeed, given Smith's decision to raise the stay question for the first time during the TRO hearing itself, Optum respectfully requests in the accompanying motion to expedite that the Court order Smith to file any response to this Motion within 24 hours.

To be sure, as the Court suggested, Optum also intends to request that the First Circuit promptly hold that this Court has jurisdiction to consider Optum's request for a TRO.  Today, Optum separately files this Motion before this Court both to accelerate potential relief and, in part, because Optum anticipates that the Court of Appeals will expect it to pursue additional relief in this Court in the first instance.  *See* Fed. R. App. 8(a)):  an injunction pending appeal and a motion for an indicative ruling.  These are distinct applications from Optum's request for a TRO.

2.     In every case in which an appeal is pending – including after final judgment – a party may seek an injunction or stay pending appeal.  Such a request calls on the district court to consider the appellant's likelihood of success on appeal, in addition to whether the party seeking the injunction faces irreparable injury.  This is a distinct legal standard from the standard governing the request for a TRO – although there is some overlap given that both seek interim equitable relief.

This Court should grant Optum's Motion for an injunction pending appeal.  Preliminarily, it is procedurally proper.  Indeed, Plaintiffs' Motion is procedurally ***required*** by Federal Rule of Appellate Procedure 8.  A rule that would preclude this Court from granting Optum an injunction to preserve the status quo would be an invitation to losing parties to manipulate this Court's jurisdiction and strip winning parties of their ability to seek interim relief at all.

Moreover, nothing about this Motion contravenes the court of appeals' jurisdiction over Smith's appeal of this Court's order denying the motion to compel arbitration.  Nor is this

motion contrary to case law holding that a district court should stay proceedings while a case is on appeal.  That is because none of the cases this Court relied on in holding that it could not impose conditions on the stay involved a request for an ***injunction*** to preserve the status quo. Rather, they involved circumstances in which district courts otherwise would have proceeded to decide the merits of the parties' dispute.

3.      The injunction in this case also clearly meets the test for interim relief.  As this Court already concluded in its February 5, 2019, Stay Order (Dkt. # 49), Optum is likely to prevail on the merits of its appeal because the contract between Optum and Smith clearly provides that a court will decide whether to award emergency or interim relief before the matter is submitted to arbitration.  In addition, under controlling First Circuit law, the Court also has equitable power to grant interim relief before referring a case to arbitration.  The risk of irreparable harm is also high:  if Smith continues his employment and shares the information he misappropriated from Optum, then Optum's valuable trade secrets will be forever compromised. In addition, the passage of time renders the value of Smith's noncompete agreement a nullity to Optum.

Granting injunctive relief is also the most efficient way to preserve the status quo pending appeal.  Interim relief in this Court would conserve party and judicial resources both here and in the court of appeals.  This Court is well positioned to decide this Motion, having already (a) considered the substance of the legal issue raised by the appeal, and (b) held an evidentiary hearing on Optum's entitlement to interim relief.  The alternative would be for Optum to file a cross-appeal from the stay order, a motion to expedite that appeal, a motion for interim relief in the First Circuit, and then briefs regarding all of the pertinent procedural and substantive contentions.  The court of appeals would then have to familiarize itself with those papers and make a decision.  Those steps would take time and consume unnecessary resources and attention.

An injunction pending appeal also will not result in any undue prejudice to any party.  It will merely preserve the status quo while the First Circuit adjudicates threshold questions.  Smith himself has the ability to limit the effect of an injunction pending appeal by moving to expedite the appellate proceedings and/or appealing the injunction itself.

By contrast, Smith's view that this Court remains powerless to grant any relief invites parties to draw out appellate proceedings in order to evade the district court's authority to assert its jurisdiction to consider a request for a TRO.  Smith has professed a desire for the arbitrator to decide all issues in the case, including whether preliminary injunctive relief is warranted – but his litigating posture is preventing that from happening.  While the appeal is pending, the case cannot even be referred to an arbitrator unless or until the stay is lifted.  And this Court's perceived inability to act on the request for temporary injunctive relief prevents it from preserving the status quo pending arbitration so that the arbitrator can provide meaningful relief if it finds in favor of Optum.  As things now stand, neither this Court nor an arbitrator can consider either the merits of Optum's claim or Optum's request for temporary relief.  It is no wonder that Smith benefits from that posture – he is the defendant, after all.  But that sort of jurisdictional manipulation is not contemplated by the Federal Rules and need not be tolerated under this Court's inherent authority.

4.      In addition (or in the alternative), the Federal Rules provide a mechanism for the court of appeals to order a limited restoration of a district court's jurisdiction to decide a pending motion when the district court would otherwise lack jurisdiction to decide the motion.  Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1 together provide that, when a party files a timely motion for relief that a district court lacks jurisdiction to grant because an appeal is pending, the district court may "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed.

R. Civ. P. 62.1(a)(3).  Such an order is called an indicative ruling.  *Ibid.*  Whether or not this

Court grants the Motion for an injunction pending appeal, Optum moves the Court for an

indicative ruling stating either that it would grant Optum's request for a TRO if it had

jurisdiction to do so or that Optum's motion for a TRO raises a substantial issue.  If the Court

promptly issues such an order, Optum will promptly request that the court of appeals remand the

case for the limited purpose of ruling on the motion for a TRO.

## ARGUMENT

## I.    THIS COURT PLAINLY HAS THE POWER TO GRANT AN INJUNCTION PENDING APPEAL.

The requested injunction merely seeks to preserve the status quo – *i.e.*, the sanctity of

Optum's trade secrets – pending the First Circuit's resolution of Smith's appeal.  That modest

relief is manifestly within the Court's power to grant, even as the appeal remains pending.

District courts have the inherent power to "preserv[e] the status quo pending appeal" –

which includes the power to act ***"[e]ven as to matters encompassed within the scope of the***

***pending appeal***."  The Late Charles Alan Wright, Arthur R. Miller, et al., 16A Fed. Prac. &

Proc. Juris. § 3949.1 (4th ed.) (emphasis added); *Newton v. Consol. Gas Co. of New York*, 258

U.S. 165, 177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of Justice

require, preserve the status quo until decision by the appellate court."); *United States v. Brooks*,

145 F.3d 446, 456 (1st Cir. 1998) (holding that a notice of appeal does not deprive the district

court of jurisdiction to enter "orders relating to procedures in aid of the appeal") (quotation

marks and citations omitted); *Kosilek v. Spencer*, No. CA 00-12455-MLW, 2012 WL 5240014,

at *1 (D. Mass. Oct. 24, 2012) (recognizing the "inherent power of courts to make whatever

order is deemed necessary to preserve the status quo" pending appeal) (quoting 11 Charles Alan

Wright & Arthur R. Miller, Federal Practice & Procedure § 2904 (2d ed. 2012)).

This power to maintain the status quo includes the power to issue injunctions. *See, e.g.*, *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir. 1991) (explaining that "a district court may grant injunctive relief after a proper notice of appeal has been filed . . . when it is necessary to preserve the status quo pending the appeal"); *Sansom Comm. by Cook v. Lynn*, 735 F.2d 1552, 1554 (3d Cir. 1984) ("[I]t is well recognized that a district court possesses residual jurisdiction to enter orders to assist in maintaining the true status quo pending disposition of an appeal.").  Indeed, this inherent power is codified in Federal Rule of Appellate Procedure 8, which provides that parties should ask a district court in the first instance for "an order . . . granting an injunction while an appeal is pending," and also in Federal Rule of Civil Procedure 62(d), which provides that, "[w]hile an appeal is pending from an interlocutory order" respecting an injunction, "the court may . . . grant an injunction on terms for bond or other terms that secure the opposing party's rights."

Smith may argue that the Court lacks the power to grant the requested injunction because it no longer has jurisdiction over this dispute.  But that is incorrect.  District courts' power to preserve the status quo is entirely consistent with the view, advanced in the February 5, 2019 Stay Order, that the filing of a notice of appeal from a denial of a motion to compel arbitration will typically vest jurisdiction in the court of appeals and stay further district court proceedings.

The Court's conclusion that it had no jurisdiction followed from the Supreme Court's statement in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  This statement describes a judge-made rule – not a legislative command – and as the First Circuit has acknowledged, the *Griggs* rule "admits of some exceptions." *Brooks*, 145 F.3d at 456.  Specifically, the purpose of the rule is to prevent the trial court and the appellate court from stepping on each other's toes –

and so "the trial court may continue to exercise a modicum of power over a case that is before

the appellate court . . . in those few situations in which the risk of an intramural collision is

small." *Ibid*.  Among other things, the trial court may enter "orders relating to procedures in aid

of the appeal." *Ibid*. (quotation marks omitted).

An injunction to preserve the status quo is precisely such an order.  Such an injunction

ensures that the ground beneath the appellate court's feet remains stable, and that the disputes it

is adjudicating will not become moot or substantially different while the appeal is pending.

Thus, a leading civil procedure treatise explains that "[t]he actions contemplated by" Federal

Rule of Appellate Procedure 8 (governing stays or injunctions pending appeal) are properly

regarded as actions "in aid of the court of appeals' exercise of its jurisdiction" – and that "[o]ther

actions that a district court may take in aid of the appellate court's jurisdiction include preserving

the status quo pending appeal."  The Late Charles Alan Wright, Arthur R. Miller, et al., 16A Fed.

Prac. & Proc. Juris. § 3949.1 (4th ed.).

Crucially, and consistent with these pronouncements, the Fourth, Seventh, and Tenth

Circuits – all of which have held that an appeal from a denial of a motion to compel arbitration

results in automatic stay – *all* expressly recognize district courts' inherent power to act to

preserve the status quo while an appeal is pending.  *See Grand Jury Proceedings Under Seal v.

United States*, 947 F.2d 1188, 1190 (4th Cir. 1991); *Ced's Inc. v. E.P.A.*, 745 F.2d 1092, 1095

(7th Cir. 1984); *United States v. Madrid*, 633 F.3d 1222, 1227 (10th Cir. 2011).[1]

There thus is no conflict between the relief Optum seeks in this Motion and this Court's

---

[1] To the best of Optum's knowledge, the Eleventh and D.C. Circuits have not reached the opposite conclusion, and district courts in those circuits have held that a district court retains the power to preserve the status quo while an appeal is pending.  *See Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 29 (D.D.C. 2013) ("[I]t is settled that 'after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court.'") (quoting *Newton*, 258 U.S. at 177); *Dillard v. City of Foley*, 926 F. Supp. 1053, 1075 (M.D. Ala. 1995) (explaining that Federal Rule of Civil Procedure 62 "allow[s] district courts to retain jurisdiction over a case to maintain the status quo where equity requires it while the case is on appeal").

February 5, 2019 Stay Order.  To the contrary, the cases upon which this Court relied stand for the principle that courts should preserve the status quo pending an appeal from the denial of a motion to compel arbitration.  In almost all of the cited cases, the district court denied a motion to compel arbitration and then required the parties to proceed with discovery and further litigation.  The courts of appeals reversed and ordered stays, reasoning that requiring the parties to undergo costly discovery and litigation would irreparably deprive them of the benefit of their arbitration agreements.  *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 265 (4th Cir. 2011) (explaining that allowing discovery to proceed would "cut against the efficiency and cost-saving purposes of arbitration" and also "alter the nature of the dispute significantly by requiring parties to disclose sensitive information"); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997) (holding that "[c]ontinuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals"); *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1162 (10th Cir. 2005) (similar); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) (explaining that "one of the principal benefits of arbitration, avoiding the high costs and time involved in judicial dispute resolution, is lost if the case proceeds in both judicial and arbitral forums").[2]

As explained in greater detail below, all of the concerns that motivated these courts to grant stays weigh in favor of an injunction pending appeal. Such an injunction would preserve the status quo while the First Circuit resolves the arbitrability question.  Denying an injunction, on the other hand, would risk irreparably harming Optum's interest in maintaining the confidentiality of its trade secrets.  It would also undermine the federal policy in favor of

---

[2] In *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 2002 WL 31818924, at *1 (D.C. Cir. Dec. 12, 2002), the court of appeals stayed the litigation – but then dismissed the appeal because the underlying order was not properly regarded as an order denying a motion to compel arbitration. *See Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.3d 250, 253 (D.C. Cir. 2003).

arbitration because the crux of the case might become moot before an arbitrator even has a chance to consider the merits.

## II.     AN INJUNCTION IS WARRANTED IN THIS CASE.

The legal standard for determining whether an injunction pending appeal is warranted is the familiar preliminary-injunction standard.  A court must weigh the traditional four factors:  (1) the movant's likelihood of success on the merits, (2) the potential for irreparable harm to the movant if the injunction is denied, (3) the balance of hardships to each party if the injunction is or is not granted, and (4) the effect (if any) that an injunction would have on the public interest. *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005).  Each applicable factor weighs strongly in favor of granting an injunction pending appeal.

A.     *Optum Is Likely to Succeed on the Merits*

As thoroughly explained in this Court's order denying without prejudice Smith's motion to compel arbitration (Dkt. # 48), the Court plainly has jurisdiction and authority to rule on Optum's TRO motion.

In brief, the parties agree, as they must, that Smith's employment contract requires the parties to submit any "claims for unfair competition and violations of trade secrets" to binding arbitration.  Dkt. # 48 at 3.  But the contract just as clearly preserves each party's ability to "seek[] emergency or temporary injunctive relief in a court of law" and provides that "*after* the court has issued a ruling concerning the emergency or temporary injunctive relief," the parties are then "required to submit the dispute to arbitration pursuant to" the arbitration policy in the contract.  Dkt. # 48 at 3-4.  That language is express and unambiguous – and courts are required to give effect to the plain language of arbitration agreements.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (reiterating that courts construing an arbitration contract must "interpret the contract as written").

Even if the parties had signed a different agreement that did not unambiguously preserve their right to seek temporary injunctive relief from a court, background legal principles have long established that courts have inherent equitable power to issue a preliminary injunction to preserve the status quo pending arbitration so that the arbitrator can provide meaningful relief if it finds the *plaintiff's* claims meritorious. *See* Dkt. #. 48 at 9 (collecting cases). That is true even where an arbitration agreement expressly preserves to the *arbitrator* the power to grant preliminary relief (*i.e.*, the opposite of the situation here). The First Circuit has held that, where preliminary relief is otherwise justified, a district court has authority in such cases to grant interim preliminary relief just until the arbitrator is in a position to rule on the need for preliminary relief itself. *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 70 (1st Cir. 2010).

Smith may now regret the terms of the employment contract he signed. But the contract says what it says – and this Court correctly held that it has the power to grant interim preliminary relief in the form of a TRO. As this Court explained, Smith's "disagreement with the court's understanding of the plain meaning of the relevant language does not create an ambiguity." Dkt. # 48 at 6. Smith nevertheless appealed. But he will not prevail on appeal because his argument has no basis in either the text of the arbitration agreement or any background principle governing courts' inherent equitable powers. In granting Smith's motion to stay proceedings, this Court described his appeal as "unmeritorious," even if it was not willing to declare if "frivolous." Dkt. # 49 at 4 n.1. Optum therefore has an extremely high likelihood of success on the merits.

B.    *Optum Will Suffer Irreparable Harm Absent an Injunction Pending Appeal.*

Optum's need for a TRO is manifest. Absent immediate injunctive relief, Optum will suffer substantial irreparable harm. Its trade secrets and other confidential information will be compromised and made available to a competitor as the result of Smith's unfair competition and

his inevitable use of Optum's trade secrets as he performs a job for ABC.

As Optum briefed in its Memorandum in Support of their Motion for Temporary Restraining Order (Dkt. # 4) and oppositions to Smith's Motion to Stay Proceedings (Dkt. #s 44 & 47) – the factual allegations and arguments of which have borne out through affidavits and live testimony – Smith's continued employment with ABC poses a direct and immediate threat to Optum's trade secrets and other confidential information.[3]

To summarize in short, Smith was a senior executive at Optum who, during his employment, was repeatedly and extensively exposed to Optum's trade secrets including, without limitation, information concerning Optum's overall corporate and product roadmaps, corporate and product strategies and business plans, merger and acquisition targets, product portfolio performance, and analyses concerning the same.  Affidavit of Steven Wolin ("Wolin Aff.," Dkt. # 7), ¶¶ 10, 15; *see* ███████████████████████████████ ████████████████████████████████████████████ ███████████████████████████  Smith now works for ABC, Optum's Amazon-Berkshire Hathaway-JPMorgan Chase-backed competitor.  In the days and weeks leading up to Smith's resignation, during which time he knew he would be leaving Optum to join ABC, Smith intentionally and systemically sought out, and printed, Optum's highly-confidential, competitive information – including information for which he had no legitimate business need.  Wolin Aff., ¶¶ 4, 57-74.

Notably, on October 29, 2018 at approximately 9:51am (Central Time) – on the same day that he interviewed for ABC and just one minute before printing out his résumé – Smith printed a highly-confidential Optum "Factbook" containing Optum's in-depth analysis of healthcare trends

---

[3] Plaintiffs hereby incorporate by reference the facts and arguments set forth in their Memorandum in Support of their Motion for Temporary Restraining Order and oppositions to Smith's Motion to Stay Proceedings, as well as the affidavits of Steven Wolin and Christopher E. Andrews (Dkt. Nos. 7 & 8).

among consumers, employers, payers, government entities, providers, and Pharmacy Benefit

Managers ("PBMs") and other life sciences entities.  Wolin Aff., ¶¶ 67-68; *see also* ██

███████████████████████████████████████████████████████████

The Factbook also identifies Optum's potential opportunities in, and solutions for, the changing

healthcare market.  Wolin Aff., ¶ 68.  As ████████████████████████████████████

███████████████████████



████████████████████████████████ Through the ███████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████ Optum does not know,

████████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████

however, the extent of Smith's disclosure. ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

On another occasion, just prior to his departure, Smith requested certain of Optum's

confidential information from several junior members on his supervisor's (Steven Wolin) team.

Wolin Aff., ¶ 62; *see also* ███████████████████████ The

confidential information he requested had nothing to do with his role at Optum, and he had no

need for the information.  Wolin Aff., ¶ 63; *see also* ████████████████████

████████████  Smith's request made several employees so uncomfortable that they

approached Steven Wolin ("Wolin") with their concerns.  Wolin Aff., ¶ 62; *see also* ███████

███████████████████████████████████████



████████████████████████  Wolin discussed the issue

with Smith's other supervisor, Nick Seddon ("Seddon") but did not have the chance to raise it

directly with Smith before Smith's abrupt resignation.  Wolin Aff., ¶ 65; *see also* ██████

████████████████████████████████████

In addition, in the days leading up to his resignation, Smith sought out and printed highly-confidential Optum information for which he had no legitimate purpose in light of his imminent departure.  On December 6 – on the same day that he received a verbal offer from ABC – Smith attended a highly-confidential, all-day, cross-team strategy meeting with Optum's senior leaders (including its CEO), which included, among other things, several deep-dive discussions concerning Optum's product portfolios, product development plans, capital planning initiatives, enterprise strategies, and other specific initiatives.  Wolin Aff., ¶¶ 18, 29.  On December 10 – the day before he signed his written ABC offer – Smith printed out a confidential Optum document concerning its product portfolio performance, new product development, and product job family and assessment plan.[5]  Wolin Aff., ¶ 36; *see also* ████████████████

████████████████   At the time he printed the OES Deck, Smith had no legitimate business need for it.  Wolin Aff., ¶ 36.  ██████████████████████████

████████████████████████████████████████████

████████████████████

---

██████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

Smith's pre-departure misconduct, paired with his continual denial of any such wrongdoing, underscores his proclivity to continue to use Optum's trade secrets for his own benefit and ABC's competitive advantage absent immediate judicial relief pending appeal.

The resulting risk to Optum is, of course, compounded by ABC's reticence concerning its willingness to disclose facts surrounding current and planned business activities, and its haphazard and disingenuous approach to ensuring Smith's compliance with his legal obligations to Optum.  As a threshold matter, ABC refuses to disclose, with any specificity, what Smith will be doing at ABC or even what its own plans for the next year are.  The following excerpt from ████████████ is illuminative:



With respect to Smith's activities, ABC has been equally unforthcoming.  All Optum could glean from ███████████ in this regard is that Smith is working ████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████████████

██ This is precisely what he did for Optum.

Without having provided Optum any meaningful understanding about what ABC is specifically doing or plans to do in the next year – or, more specifically, what Smith is doing at ABC or plans to do in the next year – ABC expects Optum to take ABC at its word that it will not allow Smith to use Optum's confidential information at ABC.  *See* Affidavit of John Stoddard ("Stoddard Aff.," Dkt. # 23-2), ¶¶ 20, 22-25.  To this end, ABC has cherry-picked areas of healthcare to exclude from Smith's scope of work (to date), including ████████████

████████████████████████████████████████████████████████

████████████████████████████████ However, ABC's self-imposed precautions necessarily depend on its own view of what constitutes Optum's confidential information and, further, entrusts Smith with self-policing. ████████████████████████████████

███████████████████████████████████████████████████████ ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ ; *see also* Stoddard Aff., ¶¶ 20-25.  This is not enough.

████████████████████ every day that Smith works at ABC is another opportunity for him to use Optum's trade secrets and other confidential information.  And the longer Smith works at ABC, the more entrenched he becomes in the company, and the greater the risk his employment poses to Optum.  Moreover, among other things, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ That Smith will – intentionally or unintentionally – use or

disclose Optum's trade secrets in the course of his collaborative work at ABC, where there are no absolute firewalls in place, is inevitable.

For these reasons, Optum requires an injunction preventing Smith from working at ABC during the pendency of his appeal to the First Circuit. Without immediate judicial intervention, it stands to lose its most sensitive competitive information comprising its trade secrets.

C.     *The Balance of Equities Favors Granting an Injunction Pending Appeal.*

Optum's likelihood of success on the merits and irreparable harm tips the balance of equities in its favor. And no equity concerns counsel in favor of denying an injunction pending appeal. If an injunction is granted, Smith would simply be required to honor the agreements he willingly entered into and for which he was substantially compensated – at least until the arbitrator can itself rule on the propriety of interim injunctive relief. ████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████ Because all equity concerns point in the direction of granting an injunction, this Court should grant this Motion and enjoin Smith from working for ABC until the expiration of his noncompete agreement.

D.     *An Injunction Pending Appeal Would Be in the Public Interest.*

Granting an injunction pending appeal would not harm the public interest; to the contrary, it would benefit the public. The public has a strong interest in ensuring that contracts are upheld. Here, granting an injunction pending appeal would functionally uphold Smith's contractual agreement not to use misappropriated information to give an unfair advantage to a competitor. It would also serve to enforce the parties' arbitration agreement – both by enforcing the agreement

to allow courts to rule on motions for emergency relief and by preserving the ability of the arbitrator to award meaningful relief if it agrees that Optum has stated meritorious claims.

## III.   THIS COURT SHOULD ISSUE AN INDICATIVE RULING ON THE PENDING MOTION FOR A TEMPORARY RESTRAINING ORDER.

In addition to entering an injunction pending appeal – or in the alternative, if the Court denies the request for such an injunction – the Court should issue an indicative ruling on Optum's motion for a TRO, pursuant to Federal Rule of Civil Procedure 62.1. Such a ruling would permit the court of appeals to remand the case to this Court for the limited purpose of ruling on Optum's motion for a TRO.

Rule 62.1 provides that, when "a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is now pending, the court may," *inter alia*, "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(3). If a district court issues such an "[i]ndicative [r]uling," the moving party must then "promptly notify the circuit clerk" pursuant to Federal Rule of Appellate Procedure 12.1. Fed. R. Civ. P. 62.1(b); Fed. R. App. P. 12.1(a). "If the district court states" in an indicative ruling "that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal." Fed. R. App. P. 12.1(b).

Rules 62.1 and 12.1 "do[] not attempt to define the circumstances in which an appeal limits or defeats the district court's authority to act in the face of a pending appeal." Fed. R. Civ. P. 62.1 advisory committee's note on 2009 adoption; Fed. R. App. P. 12.1 advisory committee's note on 2009 adoption. The rules "appl[y] only when" the "complex" "rules that govern the relationship between trial courts and appellate courts" "deprive the district court of authority to grant relief without appellate permission." *Ibid.*

19

If this Court adheres to its view that it lacks jurisdiction to rule on Optum's motion for a TRO, it should issue an indicative ruling stating either that it would grant the motion if it had jurisdiction or that the motion for a TRO raises substantial issues, and explaining why it makes sense to decide the motion now, before Smith's appeal is resolved. The requirements for an indicative motion are easily satisfied here. Optum's motion for a TRO was undoubtedly timely as it was filed on the same day as the Complaint. The instant motion is similarly timely as it is being filed one day after the Court's ruling that it lacks jurisdiction to decide the motion for a TRO. And, for the reasons set out in both the memorandum in support of the motion for a TRO and the hearing on that motion, this Court should grant the motion. If this Court prefers to take additional evidence on the motion for a TRO, the Court may state that the motion raises substantial issues and hear such additional evidence if the court of appeals grants a limited remand.

An indicative ruling is appropriate in this case because, as explained *supra* in support of the request for an injunction pending appeal, allowing Smith's appeal to proceed to resolution in the absence of any interim temporary relief would cause irreparable injury to Optum. In addition, because this Court has already heard evidence on the motion, it would be most efficient for this Court to rule on the motion in the first instance.

## <u>CONCLUSION</u>

In light of the foregoing, Optum respectfully requests that this Court allow its Motion for an Injunction Pending Appeal and/or an Indicative Ruling on the Pending Motion for a Temporary Restraining Order, and enter the order attached thereto as <u>Exhibit 1</u>.

Respectfully submitted,

OPTUM, INC. and
OPTUM SERVICES, INC.,

By their attorneys,

*/s/ Russell Beck*
Russell Beck, BBO No. 561031
Stephen D. Riden, BBO No. 644451
Hannah Joseph, BBO No. 688132
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, Massachusetts  02110
617.500.8660 Telephone
617.500.8665 Facsimile
*rbeck@beckreed.com*
*sriden@beckreed.com*
*hjoseph@beckreed.com*

Dated:  February 6, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the CM/ECF system on February 6, 2019, and will be served electronically to the registered participants as identified on the Notice of Electronic Filing through the Court's transmission facilities, and that non-registered participants have been served this day by mail.

*/s/ Russell Beck*