# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| OPTUM, INC. and<br>OPTUM SERVICES, INC.,<br><br>　　　　　　*Plaintiffs*,<br><br>　　v.<br><br>DAVID WILLIAM SMITH,<br><br>　　　　　　*Defendant*. | Civil Action No. 19-cv-10101 |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL AND/OR AN INDICATIVE RULING

## I.    INTRODUCTION

When put in context, this motion is easily resolved.  Context matters.

**What is on appeal?**  The appeal concerns who interprets the Arbitration Policy.  Optum, Inc. and Optum Services, Inc. (collectively "Optum") claim that the court should interpret the Policy and should conclude that the Policy permits the court to decide its request for a TRO.  David Smith claims that interpretation is explicitly reserved to the arbitrator and that, as a result, any interpretation of the clause in that Policy permitting resort to a court for "temporary or emergency relief" (beyond an order compelling arbitration) must initially be made by the arbitrator; in short, only the arbitrator has authority to decide who decides Optum's requested TRO.  Simply stated, the issue on appeal is whether the court can issue a TRO before the arbitrator has spoken.

**What has been stayed?**  This Court was asked to stay any decision on Optum's request for a TRO pending that appeal.  It granted that stay recognizing that, here, "a TRO is an 'aspect[]' of the case involved in the appeal.'"  ECF No. 49, p. 8.  Given the issue on appeal, that is undeniable: resolving the TRO or granting the injunctive relief that Optum sought under any other

name plainly intrudes on the appellate court's authority (as well as the authority of the arbitrator if Smith is correct).

**What is the status quo?**  Smith is working.  No injunctions have issued; no decisions have been made whether his employer is a competitor of Optum or whether he has taken or used any Optum trade secrets to his current work.  Put differently, what Optum seeks in its pending motion is not to preserve the status quo but to alter it dramatically and moot Smith's appeal.

Given that context, Optum's instant motion cannot be granted.

## II.    ANALYSIS

### A.    Optum's FRCP 62(d) Motion Is Without Merit.

Optum invokes FRCP 62(d) as the hinge for its instant motion:  "Optum respectfully requests that the Court enter an injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(d) . . . ."  Yet, that rule does not apply.  The text of that Rule begins with  a conditional limitation to a narrow subset of appeals: "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may . . . ."  Here, of course, that Rule is inapplicable because the required condition  has not been met.  The appeal here is not from an interlocutory order concerning an injunction; the appeal here is from an order refusing to compel arbitration that is made instantly appealable under the Federal Arbitration Act. 9 U.S.C. §16.  Thus, by its very terms, Rule 62(d) cannot apply to grant this Court authority to act. *Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston, Texas*, 2011 WL 13203124, at *2 (S.D. Tex. Mar. 16, 2011) (denying former Rule 62(c), now Rule 62(d), motion for an injunction pending appeal because the final judgment that was on appeal "does not grant, dissolve, or deny an injunction" meaning that "Rule 62(c) does not apply"); *Taylor v. Deutsche Bank Nat'l Trust Co. for Morgan Stanley Capital 1 Inc. Trust*

*2006-NC2 Mortg. Pass-Through Certificates, Series 2006-NC2*, 2017 WL 3315227, at *1 (D. Az. Aug. 3, 2017) (denying former Rule 62(c) motion for injunction pending appeal because "[t]he orders and judgment appealed from in this case, however, do not involve an injunction" and by its express terms former Rule 62(c) does not apply in the absence of any injunction); *Vig v. All Care Dental, P.C.*, 2014 WL 129408, at *4 (N.D. Ga. Jan. 14, 2014) (denying plaintiff's Rule 62 motion where plaintiff claimed irreparable harm and alleged that plaintiff was likely to succeed on the merits of his appeal because "no injunction was issued").[1]

Even moving past that fatal gap, Optum's motion encounters additional fatal flaws.

**First**, Optum asserts repeatedly (14 times on just pp. 6-9 of its brief in either argument or quotations from cases) that relief under Rule 62(d) lies to preserve or maintain the status quo. Yet, Optum does not seek to preserve or maintain the status quo; it seeks to change the status quo radically by forbidding Smith from work entirely, while further taking the position that at a minimum he cannot work in one-third of the health care sector of the economy. Whatever the outer limit of a court's power to preserve or maintain the status quo, a 180-degree reversal in the status quo cannot fit in that concept. *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 1987042, at *2 (N.D. Cal. June 4, 2012) (denying Rule 62 motion for injunction pending appeal because granting an injunction would prohibit Samsung from selling the Galaxy Tab 10.1, which it was selling at the time of the appeal; granting the injunction was improper because it would change "the status quo that existed at the time of the appeal"); *Greater Houston Small Taxicab Co. Owners Ass'n*, 2011 WL 13203124, at *2 (denying Rule 62 motion for an injunction pending

---

[1] *See also Bank of N.Y. Mellon v. Worth*, 2015 WL 1780719, at *4 (D. Conn. Apr. 20, 2015) (denying motions and finding that former Rule 62(c) did not apply to appeal because "that rule applies to injunctions, and no injunction is involved here."); *U.S. v. Johnson*, 2008 WL 11417067, at *1 (W.D. Tex. Dec. 8, 2008) (denying former Rule 62(c) motion for injunction pending appeal because the "Court has granted no interlocutory order, and it has granted no injunction.").

appeal and noting that "**preserving the status quo in this case would mean no injunction at all because the Court has never granted such relief")** (emphasis added); *Barringer v. Griffes*, 810 F.Supp. 119, 120 (D. Vt. 1992) (denying motion for injunction pending appeal because requested relief "would not preserve *status quo*, but [would] effectively change it").

**Second**, Optum admits that trial courts may act in a case on appeal only "in those few situations in which the risk of an intramural collision is small." ECF No. 58, p. 8. It then leaps to the conclusion (sans analysis of what is on appeal) that it should get its injunction. Here, as set out in the Introduction, the context is clear: the appellate court will decide whether the arbitrator decides or the district court decides Optum's application for a TRO. Optum's request that this Court—without waiting for the appellate court (or the arbitrator if the First Circuit concurs with Smith and the unanimous Supreme Court)—decide on an injunction is indeed colliding head-on with the First Circuit. Optum's rush is again reminiscent of Lewis Carroll's Queen of Hearts. *Alice's Adventures In Wonderland*, chapter XII ("`Let the jury consider their verdict,' the King said, for about the twentieth time that day. `No, no!' said the Queen. `Sentence first—verdict afterwards.'"). It is barred not only in Wonderland but everywhere else.

**Third**, Optum's motion—despite its heading—is a motion for reconsideration. *Accord*, *Bradshaw v. Unity Marine Corp.*, 147 F. Supp. 2d. 668, 671 (S.D. Tex. 2001) ("But at the end of the day, even if you put a calico dress on it and call it Florence, a pig is still a pig."). Rule 62 is decidedly not a back-door authorization for reconsideration. *Tribe v. U.S. Bureau of Reclamation*, 319 F.Supp.3d 1168, 1173-74 (N.D. Cal. 2018) (FRCP 62 "does not restore jurisdiction to the district court to adjudicate anew the merits of the case"); *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982) (same).

**Finally**, Optum's motion is belied by its litany of exclusively ornamental case citations: none do what it asks this Court to do; none are on point; and none are more than dicta quoted out of context.  Indeed, Optum's cited cases (when read beyond the quoted soundbite) repeatedly contradict its argument. *See, e.g., Kosilek v. Spencer*, 2012 WL 5240014, at *1 (D. Mass. Oct. 24, 2012) (holding that the district court may only exercise authority pending appeal as long as it "does not materially alter the status quo of the case on appeal"); *U.S. v. Madrid*, 633 F.3d 1222, 1227 (10th Cir. 2011) (holding that district court exceeded its authority because the subject matter of the court's ruling "goes to the heart of the case before the appellate court—the court of appeals' authority to hear the appeal"); *U.S. v. Brooks*, 145 F.3d 446, 456 (1st Cir. 1998) (holding that a timely appeal of a motion *in limine* divested the district court of authority to proceed with trial); *Ced's Inc. v. E.P.A.,* 745 F.2d 1092, 1095-96 (7th Cir. 1984) (vacating supplemental opinion issued by the district court after notice of appeal had been filed because the supplemental opinion addressed the merits of the underlying appeal and the district court was divested of jurisdiction "over the matters appealed"); *Newton v. Consol. Gas Co. of New York,* 258 U.S. 165, 177 (1922) (recognizing that a district court "may not finally adjudicate substantial rights directly involved in the appeal").

### B.    Optum's FRCP 62.1 Motion Is Without Merit.

Rule 62.1 of the Federal Rules of Civil Procedure and its twin, Rule 12.1 of the Federal Rules of Appellate Procedure, do not fit here.  Together, those rules permit indicative rulings on certain motions while an appeal is pending if, but only if, the trial court's ruling might cause the appellate court to remand rather than to pursue the appeal.  Where, as here, the motion in the district court will not be the basis for a remand, there is no reason for the trial court to entertain the motion.

This purpose is manifest in each of the examples in the Advisory Committee Notes to FRAP 12.1.  For example, "[i]n the criminal context, the Committee anticipates that Rule 12.1 will be used primarily if not exclusively for newly discovered evidence motions . . . ."  Those Notes also offer a civil context hypothetical: "The district court grants summary judgment dismissing a case.  While the plaintiff's appeal is pending, the plaintiff moves for relief from the judgment claiming newly discovered evidence and also possible fraud . . . ."  Nowhere is there any suggested basis for a motion under these Rules that does not involve assisting the appellate court in deciding a motion to remand.

Case law confirms that this rule is remand-specific and, thus, wholly inapposite here. *Medgraph, Inc. v. Medtronic, Inc.*, 310 F.R.D. 208, 211 (W.D. N.Y. 2015) (denying motion for indicative ruling because "[t]his is not a case involving newly discovered evidence or some inadvertence or mistake at the district court level, of which the appellate court would presumably be unaware. The issue here centers on the effect of the Federal Circuit's most recent decision in *Akamai* on this Court's prior ruling in Medtronic's favor. The Court of Appeals does not need this Court's advice or opinion on that issue."); *Ohio State Conference of the Nat'l Ass'n for the Advancement of Colored People v. Husted*, 2014 WL 6698763, at *2 (S.D. Ohio Nov. 26, 2014) (refusing to consider a motion for an indicative ruling in order to avoid simultaneous jurisdiction over the same matter).

Beyond lacking any connection to a remand, this proposed indicative ruling is separately barred because it overlaps with (and indeed pretermits) the question on appeal of who decides which forum should undertake to determine which applications for injunctive relief. *Reflex Media, Inc. v. Chan*, 2017 WL 8223985, at *2 (C.D. Cal. Oct. 17, 2017) (denying motion for indicative ruling because the appeal divested the district court of jurisdiction and the motion asked the court

to rule on the issue that "is on appeal" so "Defendants have placed the same issue before two courts at the same time" and their "recourse is to proceed with the appellate process"); *Rabang v. Kelly,* 2018 WL 1737944, at *3 (W.D. Wash. Apr. 11, 2018) (denying motion for indicative ruling because the request was "simply asking this Court to decide the question on appeal" and any indicative ruling could "have the potential for spawning future appeals").

Optum cited nothing but its own *ipse dixit* in its request for an indicative ruling not because there is no authority but because the authority is uniformly opposed to its request.  Here, again, Optum asks for what it is not entitled to and does so erroneously.

### C.      Even If Considered, Optum's Requested Relief Is Unjustifiable.

Optum's request for an injunction barring Smith from working for ABC is without merit.

Optum asserts that it is likely to succeed on the merits because Smith's appeal is allegedly unmeritorious. *See* ECF No. 58, pp. 10-11.  This is a total non-sequitur; it impermissibly substitutes an argument concerning Smith's likelihood of success on the merits of his appeal for the true issue—Optum's likelihood of success on the merits of its underlying claims.  Whether Smith can succeed on appeal has no bearing on the true issue for injunctive relief: Optum's likelihood of success on the merits of its claims before an arbitrator.[2]  Optum's abdication on this factor (*i.e.*, likelihood of success on the merits is the sine qua non for obtaining an injunction) demonstrates that its injunction request is baseless.

---

[2]  What Optum is really asserting in arguing success on appeal, moreover, is that the interpretation of the Arbitration Policy should be in its favor because Smith's construction is groundless: *e.g.* "no basis in . . . the text of the arbitration agreement." *See* ECF No. 58, p. 10.  That, however, confirms that the appeal is meritorious because under *Henry Schein, Inc. et al v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (Jan. 8, 2019) even "wholly groundless" issues must be resolved by the arbitrator where, as here, the parties have a delegation clause.

Smith has already briefed in detail in his Opposition to TRO (ECF No. 23) and in his Reply in Support of his Motion to Stay Proceedings (ECF No. 46, pp. 8-13) why injunctive relief is unwarranted here.  Prominent among Optum's shortfalls of proof are the following:

- Optum is alleging <u>trade secret theft</u>: (i) without identifying the trade secrets at issue; (ii) without evidence that Smith ever misappropriated an Optum trade secret; and (iii) without a single case citation or legal basis to support Optum's position that speculation about inevitable disclosure is sufficient for injunctive relief to prohibit someone from working entirely.

- Optum is alleging <u>breach of contract</u>: (i) for a non-compete that is unenforceable because it bans Smith from working for something between "every dimension of the health system" (per Optum's pleadings ECF No. 1, ¶ 13) or the entire trillion dollar space in the health care industry that Optum occupies, per Michael Weissel (ECF No. 52, p. 62:9-15); and (ii) without any evidence that Smith has actually breached his non-compete, again conceded by Mr. Weissel that no one knows yet what ABC does and that ABC could be a customer, could be a competitor, or could be both (ECF No. 52, p. 78:7-24).

Optum's speculation and rhetoric is just not enough no matter how often repeated.[3]

Furthermore, while much can (and has) been said about Optum's failure to meet its burden to warrant the extraordinary and drastic relief of a TRO, Optum's instant request raises the bar on that burden.  This is not a mere request to have Smith only work on certain matters for ABC.  Nor is it even a request for a TRO under Federal Rule of Civil Procedure 65(b)(2) to stop working for ABC for 14 days.  Instead, it is a request for an indefinite injunction: a request for more than

---

[3]  For the **trade secret claim**, *see, e.g.*, *Manganaro Northeast, LLC v. De La Cruz*, 2018 WL 5077180, at *3 (D. Mass. Aug. 22, 2018) (denying preliminary injunction where plaintiff sought to ban defendant from working for a competitor due to alleged inevitable disclosure of trade secrets; stating that "the <u>potential</u> disclosure of confidential information, alone, as a result of De La Cruz's employment with PDC does not indicate a likelihood of establishing an actually-occurring contractual breach").  For the **non-compete claim**, *see, e.g.*, *Tasktop Technologies US Inc. v. McGowan*, 2018 WL 4938570, at *6 (D. Del. Oct. 11, 2018) (denying preliminary injunction and finding that non-compete was unenforceable because defendant was "prohibited from working in any company anywhere that provides [integration or task management] services"); *Upromise, Inc. v. Angus*, 2014 WL 212598, at *6 (D. Mass. Jan. 21, 2014) (denying preliminary injunction where evidence was conflicting on whether new employer was a competitor).

Optum sought originally in its TRO.  That extraordinary request falls far short on the facts and the law for reasons that Smith has covered *ad nauseam*.[4]

## III.    CONCLUSION

For these reasons, Smith asks that this Court deny Plaintiffs' Motion in its entirety.


Respectfully submitted,

**DAVID WILLIAM SMITH**

By his attorneys,

*/s/ Brian Mead*
John F. Welsh, BBO #522640
Justin L. Engel, BBO #683894
Bello Welsh LLP
125 Summer Street, Suite 1200
Boston, MA 02110
617-247-4100
Fax: 617 247 4125
Email: jwelsh@bellowelsh.com
Email: jengel@bellowelsh.com

Michael J. Sheehan, *admitted pro hac vice*
Brian Mead, *admitted pro hac vice*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
msheehan@mwe.com

---

[4] Optum seeks pity from this Court by misrepresenting its lack of options.  It asserts that "neither this Court nor an arbitrator has authority to rule on Optum's request for such interim preliminary relief" (ECF No. 58, p. 5) and that "[w]hile the appeal is pending, the case cannot even be referred to an arbitrator unless or until the stay is lifted." *Id.*  Crocodile tears!  This Court has not enjoined Optum from proceeding directly to arbitration nor has Smith barred Optum from proceeding there.  Optum's choice to avoid arbitration is unilateral and bars its claim for equitable relief because equity will not grant relief from such a self-imposed hardship. Kames, Henry Home, Lord, *Principles of Equity* 104 (Michael Lobban 3d ed. 1760) ("Whence it follows, that no man can be intitled [sic] to the aid of a court of equity, when that aid becomes necessary by his own fault.").

9

bmead@mwe.com

Dated: February 8, 2019

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 8, 2019, the undersigned filed a copy of the above and foregoing via the Court's CM/ECF system, which will send notification of such filing to all registered participants.


*/s/ Brian Mead*
Brian Mead