UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
OPTUM, INC. and                           )
OPTUM SERVICES, INC.,                )
                                                    )
       Plaintiffs,                         )
                                                    )
v.                                                  )     Civil Action No.  19-CV-10101
                                                    )
DAVID WILLIAM SMITH,            )
                                                    )
       Defendant.                         )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO INTERVENE AND TO UNSEAL PORTION OF TRANSCRIPT
OF JANUARY 31, 2019 HEARING**
**(Hearing Requested)**

      Proposed Intervenors Dow Jones & Company, Inc., publisher of *The Wall Street Journal*, and Boston Globe Media Partners, LLC, publisher of *STAT* and *The Boston Globe*, ("Intervenors"), submit this memorandum of law in support of their motion to intervene pursuant to Fed. R. Civ. P. 24(b), and for access to the sealed portion of the transcript of the Court's January 31, 2019 hearing.[1]  The public has a presumptive common law and First Amendment right of access to hearings on motions for temporary restraining orders.  As explained below, there is no sufficient countervailing interest that could justify the continued partial sealing of the

---

[1] This Court has jurisdiction to consider this motion notwithstanding the pending appeal.  *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.")  The "general rule regarding divestiture of jurisdiction . . . does not apply to collateral matters not affecting the questions presented on appeal."  *Weaver v. Florida Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999).  Here, there is no reason to believe that a decision by this Court on the question of whether the transcript can remain under seal would "interfere with, or contradict, the court of appeals' consideration" of the issues implicated in defendant David Smith's appeal from the Court's denial of his motion to compel arbitration.  *United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995).

transcript.  The transcript should be unsealed promptly, so that the public may effectively monitor the proceedings in this action.

## BACKGROUND

Plaintiffs Optum, Inc. and Optum Services, Inc., (collectively, "Optum"), subsidiaries of UnitedHealth Group Incorporated, filed this action on January 16, 2019.  Optum alleges that defendant David William Smith left its employ to work for its alleged competitor, TCORP62018 LLC, (known by the initials "ABC"), in violation of a one-year non-competition agreement. (Complaint, Doc. No. 1).  ABC is a venture by Amazon, JPMorgan, and Berkshire Hathaway, which are "partnering on ways to address healthcare for their U.S. employees, with the aim of improving employee satisfaction and reducing costs."  (Complaint, Doc. No. 1, ¶ 18).

Along with its complaint, Optum filed a motion for a temporary restraining order barring Smith "from working for Optum's competitor ABC."  (Memo in Support of TRO, Doc. No. 4 at 20).  On January 30 and January 31, 2019, the Court held an evidentiary hearing on Optum's motion.  On the second day of the hearing, the Court closed a portion of the hearing to the public and the press after ABC's Chief Operating Officer, Jack Stoddard, testified as follows.

> THE COURT:  Some of this I think you already answered.  Has ABC designed any products yet?
>
> THE WITNESS:  Not yet.  We are exploring a broad range of things that we could possibly do, and we're trying to now narrow down to what we will do in 2019.
>
> THE COURT:  What products -- if there's an objection to this being in open court, I might entertain –
>
> MR. SHEEHAN:  I was starting to think as you were starting to ask yesterday –
>
> THE COURT:  We didn't have a problem yesterday.
>
> THE WITNESS:  Right.

> THE COURT: You mentioned that you're exploring, ABC is exploring a broad range of things you could possibly do in terms of designing products. Is that confidential information to ABC?
>
> THE WITNESS: Yes.
>
> THE COURT: All right. I told you yesterday I wanted to do this surgically. So if there's anybody in the courtroom not employed by ABC or Optum, you're going to have to go outside for a short period of time. Please go.

(**Exhibit 1**, Transcript of January 31, 2019 Hearing ("Tr.") at 112).

The record does not reflect that counsel for defendant made any motion that this particular portion of Stoddard's testimony be closed to the public, nor did any party submit evidence that Stoddard's testimony was likely to include material that could be sealed under applicable law. The Court made no findings justifying the closure of the courtroom.

After the Court's instruction, reporters for the Intervenors, as well as several other journalists, left the courtroom in compliance with the Court's instruction. The transcript reflects that the remainder of Stoddard's testimony took place in a closed hearing. That portion of the transcript is sealed. (Doc. No. 53).

ARGUMENT

I.  **THE PRESS IS ENTITLED TO INTERVENE PURUSANT TO FED. R. CIV. P. 24 TO ASSERT THE PUBLIC'S RIGHT OF ACCESS.**

A third party seeking to challenge the sealing of a court document may intervene for that limited purpose pursuant to Fed. R. Civ. P. 24(b). *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 407 (1st Cir. 1987) (newspaper permitted to intervene to challenge sealing of court documents); *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) (noting that "every court of appeals to have considered the matter has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders."); *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (holding

under "longstanding tradition of public access to court records," Rule 24(b) is "an avenue for third parties to have their day in court to contest the scope or need for confidentiality," and that "third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order.") (internal citations and quotations omitted).  Intervenors have filed this motion for precisely that limited purpose, and they should accordingly be permitted to intervene.

II. THE PUBLIC HAS A PRESUMPTIVE COMMON LAW RIGHT OF ACCESS TO THE SEALED PORTION OF THE TRANSCRIPT.

"[T]here is a strong common law presumption favoring public access to judicial proceedings and records." *In re Salem Suede, Inc.*, 268 F.3d 42, 45 (1st Cir. 2001), citing *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410; *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 9–10 (1st Cir. 1998).  This presumption "stems from the premise that public monitoring of the judicial system fosters the important values of 'quality, honesty and respect for our legal system.'" *Siedle*, 147 F.3d at 9–10; quoting *Standard Fin. Mgmt.*, 830 F.2d at 410.  While the common law access right is "not unfettered," *id.* at 10, "[t]he citizens' right to know is not lightly to be deflected," and "'[o]nly the most compelling reasons can justify non-disclosure of judicial records.'" *Standard Fin. Mgt.*, 830 F.2d at 410, quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983).  A court faced with a question of whether to close the courtroom or maintain the sealing of a judicial record "must carefully balance the competing interests that are at stake in the particular case." *Siedle*, 147 F.3d at 10.

Here, the Court appears to have closed the courtroom for the purpose of hearing testimony by ABC's Chief Operating Officer, Jack Stoddard, about the "broad range of things" ABC "could possibly do in terms of designing products."  (Ex. 1, Tr. at 112).  The Court made

no findings justifying its decision to close the hearing, but evidently did so in response to Stoddard's testimony that such information is "confidential information to ABC." (*Id.*).

The mere fact that a business treats certain information as "confidential" is not a sufficient basis to overcome the "strong and sturdy" common-law presumption of public access to judicial proceedings. *Standard Fin. Mgt. Corp.*, 830 F.2d at 410. To be sure, courts have sometimes "refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), citing *Schmedding v. May*, 85 Mich. 1, 5–6, 48 N.W. 201, 202 (1891); *Flexmir, Inc. v. Herman*, 40 A.2d 799, 800 (N.J.Ch. 1945); *In re Nat. Broad. Co., Inc.*, 653 F.2d 609, 613 (D.C. Cir. 1981) ("The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings . . . to protect trade secrets . . . .") However, the closure of a court proceeding to hear such information can only be based on a careful balancing of the information and the interests involved, to determine whether the asserted competitive harm outweighs the public's right to attend court proceedings. *Siedle*, 147 F.3d at 10. The record does not reflect that any such balancing occurred here.

In a similar vein, courts routinely hold that the mere fact a document is properly designated "confidential" pursuant to stipulated protective order does not satisfy the "vastly more demanding standards for sealing off judicial records from public view." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 307 (6th Cir. 2016) ("that a mere protective order restricts access to discovery materials is not reason enough . . . to seal from public view materials that the parties have chosen to place in the court record."); *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 449 (D. Mass. 2015) (rejecting blanket request to seal summary judgment filings containing confidential business information based on confidentiality

stipulation, without establishing an "overriding interest in sealing" and ensuring "that any sealing is narrowly tailored to shield as little from public view as possible."). Rather, as with all questions under the common law standard, the Court must "weigh the presumptively paramount right of the public to know against the competing private interests at stake," and seal only the information that meets the standard of "compelling reasons." *Standard Fin. Mgt.*, 830 F.2d at 410. Such balancing must take place "in light of the relevant facts and circumstances of the particular case," *Nixon,* 435 U.S. at 599, and the burden of persuasion rests with "those seeking to keep the datum hidden from view," not with the party seeking access. *Standard Fin. Mgt. Corp.*, 830 F.2d at 411.

Here, the record does not reflect that any party requested that this particular portion of Stoddard's testimony be closed to the public, nor does it contain evidence that public release of that testimony would harm ABC's competitive standing. Nor is it obvious that Stoddard's general testimony about the "broad range of things" ABC "could possibly do in terms of designing products" is necessarily so sensitive that would harm ABC's competitive standing if released. (Ex. 1, Tr. at 112). Absent such a showing as to the information relayed in the closed portion of the hearing, the transcript of it should be unsealed.

### III. THE PUBLIC HAS A FIRST AMENDMENT RIGHT OF ACCESS TO THE SEALED PORTION OF THE TRANSCRIPT.

In addition to the common-law right of access discussed above, every federal Court of Appeal to decide the question has held that there is a First Amendment right of access to civil court records and proceedings.[2] *In re Guantanamo Bay Detainee Litig.,* 624 F. Supp. 2d 27, 36

---

[2] The First Circuit has not yet decided whether the First Amendment right of access applies to civil proceedings, as it does to criminal matters. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir. 1989) ("This circuit, along with other circuits, has established a First Amendment right of access to records submitted in connection with criminal proceedings."); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11-12 (1st Cir. 1986) (applying "experience" and "logic" test to discovery pleadings in civil case without

(D.D.C. 2009) (noting that the courts have "uniformly held that the public has a First Amendment right of access to civil proceedings and records"), and collecting cases; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (holding summary judgment papers subject to the "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents."); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) ("[W]e hold that the First Amendment embraces a right of access to civil trials to ensure that [the] constitutionally protected discussion of governmental affairs is an informed one."), internal citations and quotations omitted.

"The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014), quoting *In re United States for an Order Pursuant to 18 U.S.C. Section 2703*, 707 F.3d 283, 290 (4th Cir. 2013); *In re Providence Journal Co., Inc.*, 293 F.3d 1, 11 (1st Cir. 2002) (noting that the "First Amendment standard [is] even more stringent than the common-law standard."). Where a First Amendment right of access applies, it may be overcome only if the Court makes "specific, on the record findings . . . demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 13-14 (1986) ("*Press-Enterprise II*"), quoting *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

---

deciding whether a First Amendment right to civil documents applies); *Standard Fin. Mgt. Co., Inc.*, 830 F.2d at 408 n. 3 (reserving question of whether First Amendment right of access applies to civil documents). Of course, if the Court releases the transcript under the common law access right, it need not decide whether the First Amendment right of access attaches here.

To determine whether the First Amendment right applies to a particular judicial proceeding, the courts employ a two-part test that considers: (1) "experience," whether the proceeding has historically been open to the press and the public, and (2) "logic," whether "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II,* 478 U.S. at 8. Evidentiary hearings on motions for temporary restraining orders plainly meet both prongs of the test. *See Publicker Indus., Inc.*, 733 F.2d at 1072 (closure of preliminary injunction hearing and sealing of transcript reversed based on common law and First Amendment rights of access).

As to the "experience" prong, evidentiary hearings on motions for temporary restraining orders and other forms of injunctive relief plainly "have historically been open to the press and general public." *Press-Enterprise II*, 478 U.S. at 8. Moreover, where a common law right of access exists, the courts have tended to conclude that there is a history of openness that satisfies the "experience" prong of the First Amendment test, because the common law right "is firmly rooted in our nation's history." *Lugosch*, 435 F.3d at 119.

The "logic" prong is easily met here as well, because temporary restraining orders have a direct bearing on the substantive legal rights of the parties. Indeed, in many "non-compete" cases like this one, the allowance or denial of a TRO is <u>the</u> key event in the case. Lee Gesmer, Joseph Laferrera, "Employee Noncompetition Agreements," § 31.6.6(c), Massachusetts Employment Law, Massachusetts Continuing Legal Education, Inc. (2017) ("[I]t is often the awarding of a TRO or preliminary injunction (or the court's decision to decline to grant such relief) that prompts rapid resolution of a noncompete dispute.") Therefore, as with other trial-type proceedings, openness of TRO hearings tends to promote public confidence in the judicial system:

8

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the . . . trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enterprise I,* 464 U.S. at 508.

Any party that seeks to maintain the transcript of Stoddard's testimony under seal must shoulder a heavier burden under the First Amendment than is imposed by the common law: it must demonstrate that sealing is "necessary to preserve higher values" and that the sealing order "is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124, 126. If the Court is to maintain sealing, it must "identify and balance the competing interests involved, and weigh reasonable alternatives to sealing, making findings where necessary." *In re Providence Journal*, 293 F.3d at 13. Those findings must be "specific," because "the First Amendment right of public access is too precious to be foreclosed by conclusory assertions or unsupported speculation." *Id.* For the reasons discussed above with regard to the common law standard, such findings are unlikely to be made here.

IV.     **THE COURT SHOULD UNSEAL THE TRANSCRIPT PROMPTLY.**

In *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989), the First Circuit held that sealing of court records "delays access to news, and delay burdens the First Amendment." *Id.* Indeed, "even a one to two day delay impermissibly burdens the First Amendment." *Id; see also Soto v. Romero–Barcelo (In re San Juan Star Co.)*, 662 F.2d 108, 113 (1st Cir.1981) ("The interest asserted is that of covering effectively an ongoing judicial proceeding of significant hard news interest. Time is of the essence to such coverage in an almost singular fashion."). "In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access

9

should be immediate and contemporaneous." *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (internal citations omitted). "The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Id.*, citing *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 250 (7th Cir.1975), cert. denied, 427 U.S. 912 (1976) (it is "only when the litigation is pending and current news that the public's attention can be commanded."). Accordingly, the Court should rule promptly on Intervenors' request, and vindicate the public's right of contemporaneous and immediate access to the information conveyed at the hearing.[3]

---

[3] The courtroom closure has, of course, irretrievably deprived the public of "some information, concerning demeanor, non-verbal responses, and the like," which cannot be observed from the transcript alone. *ABC, Inc. v. Stewart*, 360 F.3d 90, 99–100 (2d Cir. 2004); *Publicker Indus., Inc*., 733 F.2d at 1072 ("[T]he availability of a trial transcript is no substitute for a public presence at the trial itself. As any experienced appellate judge can attest, the cold record is a very imperfect reproduction of events that transpire in the courtroom.") (internal quotation marks omitted). This circumstance renders it appropriate to expedite consideration of Intervenors' request to unseal the transcript.

## CONCLUSION

For the foregoing reasons, Intervenors Dow Jones & Company, Inc. and Boston Globe Media Partners, LLC, respectfully request that they be permitted to intervene in this action to assert the public right of access to the sealed portion of the transcript of the January 31, 2019 hearing, and that the transcript of that hearing be unsealed.

Respectfully Submitted,

DOW JONES & COMPANY, INC. and
BOSTON GLOBE MEDIA PARTNERS, LLC,

By their Attorneys,

/s/ *Jeffrey J. Pyle*
Robert A. Bertsche (BBO #554333)
Jeffrey J. Pyle (BBO #647438)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
(617) 456-8000 (tel.)
(617) 456-8100 (fax)
jpyle@PrinceLobel.com

## CERTIFICATE OF SERVICE

I, Jeffrey J. Pyle, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on February 8, 2019.

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle
