UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

OPTUM, INC. and
OPTUM SERVICES, INC.,

*Plaintiffs*,

v.

DAVID WILLIAM SMITH,

*Defendant*.

Civil Action No. 19-cv-10101

## DEFENDANT DAVID WILLIAM SMITH AND NON-PARTY TCORP62018 LLC'S OPPOSITION TO MOTION TO INTERVENE AND UNSEAL PORTION OF TRANSCRIPT OF JANUARY 31, 2019 HEARING

### I.     INTRODUCTION

Defendant David William Smith ("Smith") and non-party intervenor Tcorp62018 LLC ("ABC") hereby oppose Proposed Intervenors Dow Jones & Company, Inc.'s and Boston Globe Media Partners, LLC's (collectively, "the Newspapers") Motion to Intervene and Unseal Portion of Transcript of January 31, 2019 Hearing.  The Newspapers argue that (i) the public has a common law and First Amendment right of access to testimony from ABC's Chief Operating Officer, Jack Stoddard, about *confidential* measures that ABC is exploring to reduce health care costs for the employees of its founding companies, and (ii) such testimony *may* be relied upon by this Court as a basis to grant or deny Optum's request for a temporary restraining order.  This Motion should be denied for three reasons.

**First**, the Newspapers have placed the proverbial cart before the horse.  The Newspapers have no common law nor constitutional right to hear testimony given during a pretrial civil

proceeding, which has yet to be relied upon—and may never be relied upon—by this Court for any judicial ruling.

**Second**, the reason this Court may not now, or potentially ever, issue a ruling is because Smith has moved to compel this matter to private and *confidential* arbitration and has appealed this Court's denial of that motion to the First Circuit.  Granting the Newspapers' Motion while Smith's appeal is pending would impermissibly deny Smith the benefit of his arbitration bargain.

**Third**, and finally, even if the Newspapers had a legal interest in the testimony, that interest is easily overcome by ABC's interest in preserving its confidential, trade secret business strategies.

The Newspapers' Motion, therefore, should be denied.

## II.    ANALYSIS

### A.    There Is No Common Law Or Constitutional Right To Testimony Provided During A Civil Pretrial Proceeding For Which The Court Has Yet To Issue— And May Never Issue—A Ruling.

The Newspapers' Motion generically argues that the public has a right of access to court proceedings.  But contrary to their argument, all proceedings are not created equal.  Although the Supreme Court has recognized a qualified First Amendment right to access certain criminal proceedings, neither it nor the First Circuit has similarly recognized a qualified First Amendment right of access to civil proceedings generally or pretrial court records specifically. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11 (1st Cir. 1986) (declining to consider whether there is a First Amendment right of access to documents considered in dispositive pretrial motions and civil trials in general).

In *Anderson*, the First Circuit found no First Amendment right of access to documents considered in civil discovery motions. *Id.* at 11.  The court reasoned that the rationale of the Supreme Court's cases finding a First Amendment right of access in criminal proceedings does

not apply to civil discovery documents, because the civil discovery process historically has not been open to the public, and public access did not play a significant role in the functioning of that process.  *Id.* at 12-13.

More recently, in *United States v. Kravetz*, 706 F.3d 47 (2013), the First Circuit held that there is no First Amendment right of public access to Rule 17(c) pretrial subpoenas duces tecum and related documents in a criminal proceeding. *Id.* at 54.  There, the court rejected citation to a "trend" in favor of recognizing a presumptive right of access to documents filed in non-discovery related pretrial criminal proceedings. *Id.* at 53.  Critical to the court's determination was its view that the journalist's generalized interest in public access "has little positive role" in the underlying dispute. *Id.* at 54.

Here, the dispute checks not one but two boxes: it is a pretrial, civil proceeding.  This is precisely the type of preliminary proceeding in which the public has zero interest:

> [C]ertain forms of preliminary relief may be granted without notice to the adverse party, let alone notice to the general public. The availability of preliminary injunctive relief without notice reflects the temporary nature of such relief, which diminishes the public's interest in access to related documents.

*Agro v. Makhteshim Agan of N. Am., Inc.*, 2011 WL 13157168, at *3 (M.D.N.C. July 13, 2011) (sealing confidential business information that contained company's business strategies; holding that "**there is no First Amendment right of access to the documents regarding Plaintiffs' motion for a preliminary injunction**" and the "public's interest in access to these documents is limited due to such factors as the preliminary and temporary nature of the requested relief") (emphasis added).

Moreover, the Court has not even issued a ruling on Plaintiff's request for injunctive relief, thus making the Newspapers' Motion premature.  That is because Optum and Smith agree that their underlying dispute is subject to arbitration, but disagree on whether Optum may obtain any

temporary injunctive relief outside of the arbitration process, and exclusively in aid of arbitration. There is zero need to unseal a transcript that this Court might not rely on, for a dispute that this Court might not rule on.

Furthermore, the Newspapers have failed to articulate how public disclosure is important to the functioning of the judicial process. The federal docket is flooded with employee mobility disputes similar to this dispute which the Newspapers have never covered, and have no intent to cover. Nor have the Newspapers asked to unseal any redacted but allegedly confidential information provided by Optum. *See* ECF Nos. 1-6, 1-7. Presumably, that same information is part of the Newspapers' stated justification to unseal the transcript—*i.e.*, their desire to cover the "newsworthiness of a particular story." ECF No. 65, p. 10. Instead, they only seek disclosure of a single fact: what is ABC's strategy to reduce health care costs for the employees of Amazon, Berkshire Hathaway, and J.P. Morgan Chase. The Newspapers' curiosity into ABC's private business strategy enjoys no constitutional protection, and their Motion should be denied.[1]

**B.    Disclosure Impermissibly Deprives The Parties Of The Benefit Of the Confidentiality Provision Of The Arbitration Agreement.**

The procedural posture of this case provides an additional impediment to the Newspapers' Motion to unseal Stoddard's testimony. "One of the most significant benefits of arbitration is the ability of the parties to keep the process confidential." Advantages of Arbitration, 2006 Health L. Handbook § 2:8. That is why Optum and Smith specifically agreed as follows:

> All proceedings under this Policy are private and confidential, unless applicable law provides to the contrary. The arbitrator shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law provides to the

---

[1]  The Newspapers' failure under the First Amendment forecloses their common law argument as well because "the common law does not provide as much access to the press and public as does the First Amendment." *In re State-Record Co.*, 917 F.2d 124, 127 (4th Cir. 1990); *see also U.S. v. Kaczynski*, 154 F.3d 930, 932-33 (9th Cir. 1998) (collecting 9th Circuit and Supreme Court cases in stating that generally when courts "decide issues involving the press's right to access they resolve them on First Amendment grounds rather than on the less protective common law basis").

contrary. The arbitrator shall have the authority to make appropriate rulings to safeguard that confidentiality.

ECF No. 17-1, at § D.8.[2]

Several courts have recognized that evidence submitted in a proceeding to compel or enforce arbitration may be done under seal because to hold otherwise deprives the parties to the arbitration agreement of the benefit of their confidentiality bargain. *See*, *e.g.*, *Decapolis Group v. Mangesh Energy, LTD*., 2014 WL 702000, at *1 (N.D. Tex. Feb. 24, 2014) (granting motion to seal the arbitrator's findings of fact and conclusions of law which were appended to a motion to confirm arbitration award because they contained extensive findings including descriptions of business strategy); *Wyeth v. Medtronic, Inc.*, 2008 WL 11381926, at *3 (D.N.J. Apr. 28, 2008) (granting defendants' motion to seal portions of filings appended to a motion to confirm an arbitration award, and recognizing "the Federal Arbitration Act's policy strongly favoring arbitration would be undermined if litigants were forced to disclose confidential terms of a private settlement agreement . . . in order to enforce the agreement to arbitrate").

Here, any order unsealing Stoddard's testimony would deprive Smith, and in turn ABC, of the benefit that he bargained for; disputes with his prior employer would be litigated confidentially and not in the public domain. Until the First Circuit rules on the enforceability of that promise,

---

[2]  ABC, which has been dragged into this litigation as the hiring employer, is a third-party beneficiary of this agreement. *See CardioNet, LLC v. InfoBionic, Inc.*, 2017 WL 1115153, at *3 (D. Mass. Mar. 24, 2017) (granting motion to compel arbitration for new employer that hired employee who allegedly misappropriated former employer's trade secrets and finding that new employer was entitled to invoke the arbitration agreement because "the misappropriation claims are founded in and inextricably intertwined with [the employee's] obligations to contracts that are the subject of the arbitration agreement"); *see also Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 40 (1st Cir. 2008) (reversing district court's refusal to dismiss in favor of arbitration; non-signatories to an arbitration agreement had the right to enforce the agreement because the subject matter of the suit in which they were involved was intertwined with the subject matter within the scope of the arbitration clause).

this Court must preserve the status quo of the parties, which prevents public disclosure of any evidence submitted during proceedings under the Arbitration Policy. ECF No. 17-1, at § D.8.

### C.  ABC's Interest In Protecting Its Confidential, Trade Secret Business Strategy Outweighs Any Right of Public Access.

Even if the Newspapers could show a First Amendment right of public access to Stoddard's testimony, ABC's interest in preserving the confidentiality of its trade secret information justifies sealing Stoddard's testimony.  "Trade secrets are a peculiar kind of property.  Their only value consists in their being kept private.  If they are disclosed or revealed, they are destroyed." *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 662 (8th Cir. 1983) (affirming decision to seal hearing that involved trade secrets where the district court was "intimately familiar with the trade-secrets issue and its implications").

During Stoddard's sealed testimony, he was asked to discuss topics that included ABC's current strategies, future plans, and how Smith's work fit into those strategies and plans. *See* ECF No. 52, pp. 114-23.  This is precisely the type of information that is protected by the Massachusetts Uniform Trade Secrets Act (MUTSA).[3] *See* M.G.L. c. 93 § 42(4).  The MUTSA expressly protects a "**business strategy**" that (i) provides economic advantage from not being generally known to others who might obtain economic advantage from its acquisition; and (ii) is subject to efforts that are reasonable under the circumstances to protect against it being acquired, disclosed, or used without the person's consent.  Here, Stoddard's testimony regarding ABC's strategy (i) is not generally known to the public, (ii) could provide economic advantage to someone who acquired it, and (iii) is subject to ABC's reasonable efforts to preserve secrecy, including password

---

[3]  Federal courts "refer[] to state law for purposes of defining a trade secret in the context of orders addressing public access." *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 2014 WL 2607364, at *3 (M.D.N.C. June 11, 2014); *see also Pochat v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 5192427, at *7 (D.S.D. Dec. 11, 2008).

protecting its computers, providing access to business strategy information only to those employees with a need to know the information, and requiring employees to sign agreements containing obligations regarding non-disclosure of confidential information. *See* Ex. 1, Stoddard Aff. ¶ 4.  ABC's interest in maintaining the confidentiality of this wholly private business strategy outweighs any public interest in the testimony. *See Agro*, 2011 WL 13157168 at *3; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 355 (S.D.N.Y. 1996) (noting that "[t]he courts have long recognized the protection of trade secrets as an important interest underlying confidentiality" and holding that defendants' interest in protecting their trade secrets outweighed any public right of access in early stage of litigation).[4]

## III.    CONCLUSION

For the reasons set forth above, ABC and Smith respectfully request that this Court deny the Newspapers' Motion.

Respectfully submitted,

**DAVID WILLIAM SMITH AND TCORP62018 LLC**

By their attorneys,

*/s/ Brian Mead*

---

[4]  The Newspapers rely on *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7 (1st Cir. 1998) and *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 407 (1st Cir. 1987) to argue for public access.  That reliance is misplaced.  In *Siedle*, the First Circuit reversed the district court's order unsealing privileged material and held that the attorney-client privilege was a countervailing interest sufficient to defeat the common law presumption of public access. *Id.* at 12.  In *Standard Fin. Mgmt. Corp.*, the court affirmed the district court's order unsealing sworn personal financial statements, holding that the presumption of public access applied to the statements. *Id.* at 410. The court found that defendants failed to establish that special circumstances precluded disclosure of the statements where they were "wholly unable to point the court below to a single particularized harm which might befall them, or to any sufficiently unique reason to warrant special treatment." *Id.* at 412.  Those cases did not involve trade secret information and do not apply here.

John F. Welsh, BBO #522640
Justin L. Engel, BBO #683894
Bello Welsh LLP
125 Summer Street, Suite 1200
Boston, MA 02110
617-247-4100
Fax: 617 247 4125
Email: jwelsh@bellowelsh.com
Email: jengel@bellowelsh.com

Michael J. Sheehan, *admitted pro hac vice*
Brian Mead, *admitted pro hac vice*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
msheehan@mwe.com
bmead@mwe.com

Dated: February 15, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, the undersigned filed a copy of the above and foregoing via the Court's CM/ECF system, which will send notification of such filing to all registered participants.

/s/ Brian Mead
Brian Mead