UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPTUM, INC. and<br>OPTUM SERVICES, INC.,<br><br>      Plaintiffs,<br><br>v.<br><br>DAVID WILLIAM SMITH,<br><br>      Defendant. | Civil Action No. 19-CV-10101 |

**REPLY OF MEDIA INTERVENORS IN SUPPORT OF
MOTION TO INTERVENE AND TO UNSEAL PORTION OF TRANSCRIPT
OF JANUARY 31, 2019 HEARING**

The opposition of defendant David Smith and TCORP62018 LLC (collectively, "ABC"), to the Media Intervenors'[1] motion to unseal fails to show that there is any countervailing interest sufficient to overcome the public right of access to John Stoddard's testimony.  **First**, contrary to ABC's assertion that the public has "zero interest" in the TRO hearing, there is a well-established public right of access to pretrial civil proceedings under both the common law and the First Amendment.  **Second**, the public's right of access applies immediately upon submission of documents or testimony to the Court—it is not limited, as ABC claims, to material upon which the Court ultimately relies.  **Third,** ABC submits only conclusory statements and labels to support its assertion that ABC's business interests would be impaired by release of the transcript, and such generalities are insufficient to establish an overriding interest in maintaining impoundment.

---

[1] Dow Jones & Company, Inc. and Boston Globe Media Partners, LLC.

1

I.   **THERE IS A COMMON LAW AND A FIRST AMENDMENT RIGHT OF ACCESS TO CIVIL PRETRIAL HEARINGS AND DOCUMENTS.**

ABC asserts that the public has "zero interest" in any preliminary, pretrial civil proceeding. (Opposition at 3). The courts, however, have held to the contrary. *See, e.g., Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (finding First Amendment and common law right of access to civil proceedings, including transcripts of a hearing on an injunction); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) (presumptive right to public access to nondiscovery pretrial motions); *Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1309 (7th Cir. 1984) (right of public access applies to pretrial motion in civil cases); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (absent the most compelling reasons, documents used by parties moving for or opposing summary judgment should not remain under seal); *see Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986) (acknowledging that sister circuits have recognized a right of public access to pretrial civil proceedings).[2]

In support of its assertion that the public has no interest in this proceeding, ABC relies on an unreported district court opinion that held that there <u>is</u> a common-law right of access to preliminary injunction proceedings, just not a First Amendment right.[3] *Agro v. Makhteshim*

---

[2] ABC argues that the hearing on the motion for a temporary restraining order is of little interest to the public because a TRO only lasts for a short period of time. Yet in a pleading filed in the First Circuit, ABC noted (correctly) that "the TRO is typically outcome dispositive in cases challenging ex-employees." (Opposition to Motion for Injunction Pending Appeal, Feb. 14, 2019 at 6 n. 5 (citing Lee Gesmer, Joseph Laferrera, "Employee Noncompetition Agreements," § 31.6.6(c), Massachusetts Employment Law, Massachusetts Continuing Legal Education, Inc. (2017) ("[I]t is often the awarding of a TRO or preliminary injunction (or the court's decision to decline to grant such relief) that prompts rapid resolution of a noncompete dispute.")).

[3] In a footnote, ABC erroneously asserts that if there is no First Amendment right of access to a TRO proceeding, then there cannot be any common law right of access. This gets the law backwards. As the Fourth Circuit has explained, "[t]he common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that countervailing interests heavily outweigh the public interests in access. By contrast, the First Amendment secures a right of

*Agan of N. Am., Inc.*, No. 1:10CV276, 2011 WL 13157168, at *3 (M.D.N.C. July 13, 2011). On an unopposed motion to seal, the court held that the parties "have successfully rebutted the presumption of a common-law right of access," because the documents contained specific "information regarding marketing strategy, product launch schedules, and sales projections that are not publicly available," and "this court's review of the documents reveals that their contents do in fact include confidential information that could provide a commercial advantage to its possessor." *Id.* Here, as explained below, ABC has failed to make any such showing.

## II.  THE MEDIA INTERVENORS' MOTION IS NOT "PREMATURE."

ABC argues that the Media Intervenors' motion is "premature" because it is not yet known what testimony or documents the Court will rely upon in rendering its decision on the motion for a TRO. The public's access right is not so limited.

In *FTC v. Standard Fin. Mgmt. Corp.*, the First Circuit held that "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies." 830 F.2d 404, 409 (1st Cir. 1987). As the Second Circuit has observed, this framing of the right of access "has nothing to do with how a court ultimately comes out on a motion." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 122 (2d Cir. 2006). Other circuits agree that the common law and First Amendment rights of access attach immediately, not when the Court ultimately rules in the underlying case. "In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be

---

access only to particular judicial records and documents, and, when it applies, access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (internal quotations and citations omitted). This, the First Amendment imposes a higher standard for the sealing of certain proceedings, leaving the common law standard applicable to all other proceedings.

appropriate, access should be immediate and contemporaneous." *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (internal citations omitted).

Indeed, in *Lugosh,* the Second Circuit rejected the precise argument advanced here: that "until a district court knows the disposition of the underlying motion, any attempt at calling something a judicial document is premature." *Lugosch*, 435 F.3d at 121. In that case, the district court delayed its ruling on a motion for access to summary judgment papers because it had not yet decided the summary judgment motion. This approach to the right of access, the court held, "cannot stand," because (among other reasons), "'[i]f the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision . . . documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision.'" *Id.* at 122-123, quoting *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D. Cal. 1984) (italics in original). Thus, the right of access applies equally to submissions upon which the court does and does not rely, and the right of access cannot be made to wait until the Court renders a decision.[4]

### III. ABC PRESENTS NO FACTS SUPPORTING CONFIDENTIALITY.

Finally, ABC has failed to present any facts demonstrating that its interest in confidentiality outweighs the public's right of access. A finding of good cause to maintain

---

[4] ABC suggests that the Court should deny access because, it presumes, the Media Intervenors are more interested in reporting on the business plans of ABC than in monitoring this Court's handling of the proceeding. (Opposition at 4). "However . . . motive generally [is] irrelevant to defining the weight accorded the presumption of access. It is true that journalists may seek access to judicial documents for reasons unrelated to the monitoring of Article III functions. Nevertheless, assessing the motives of journalists risks self-serving judicial decisions tipping in favor of secrecy. Where access is for the purpose of reporting news, moreover, those interested in monitoring the courts may well learn of, and use, the information whatever the motive of the reporting journalist." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

4

documents under seal "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson*, 805 F.2d at 7.

Here, ABC presents only the one-page, conclusory affidavit of John Stoddard, who states in general terms that the information elicited in the testimony is non-public, is kept secret, and "could provide economic advantage to a third-party that acquired it." (Stoddard Aff., Ex. 1 to Opposition, ¶ 4). Stoddard does not explain how the information would provide an advantage to a third party, nor how ABC would be harmed if the information were released. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 412 (access affirmed where party failed "to point the court . . . to a single particularized harm which might befall them, or to any sufficiently unique reason to warrant special treatment.")

Nor could the Court presume such harm from the circumstances. Unlike other commercial entities, ABC is "focused on a predetermined market (the employees of its founders: Amazon, Berkshire Hathaway, and JP Morgan Chase)," is "an organization with no products," and "does not have any revenue and does not charge for the services it provides." (Opposition to Motion for Injunction Pending Appeal, 1st Cir. No. 19-1149, Feb. 14, 2019, at 10). Under those circumstances, it is unclear how Stoddard's generalized testimony about what products ABC is "considering trying to develop, say, in 2019," (Tr. at 116), could possibly amount to a "formula, pattern, device or compilation of information . . . used in one's business . . . which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736 (1970).[5]

---

[5] ABC attaches significance to the fact Stoddard testified unwillingly in this case. In *Lugosch*, however, the court held that the identity of the party that has "put the contested documents in their motion papers in the case before us is irrelevant to our analysis," because the law of access does not "distinguish between the moving and opposing party in concluding that there is a presumption of access to documents submitted to the court at summary judgment." *Lugosch*, 435 F.3d at 122.

3141721.v3

Finally, the mere fact that an arbitration agreement is at issue in this case is no basis to seal Stoddard's testimony. Private parties cannot contract away the public's First Amendment and common law right to monitor what occurs in a court proceeding. This Court has determined that it has the authority to enter preliminary orders in this case, and the First Circuit has remanded the matter for the purpose of "resolving the pending motion for TRO." (Order, 1st Cir. No. 19-1149, Feb. 15, 2019). Whether or not this case ultimately makes it to arbitration, the public's interest in this proceeding persists.

Respectfully Submitted,

DOW JONES & COMPANY, INC. and
BOSTON GLOBE MEDIA PARTNERS, LLC,

By their Attorneys,

/s/ *Jeffrey J. Pyle*
Robert A. Bertsche (BBO #554333)
Jeffrey J. Pyle (BBO #647438)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
(617) 456-8000 (tel.)
(617) 456-8100 (fax)
jpyle@PrinceLobel.com

CERTIFICATE OF SERVICE

I, Jeffrey J. Pyle, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on February 18, 2019.

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle