## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPTUM, INC. and<br>OPTUM SERVICES, INC.,<br><br>                    *Plaintiffs*,<br><br>         v.<br><br>DAVID WILLIAM SMITH,<br><br>                    *Defendant*. | Civil Action No.: 19-cv-10101-MLW |

### PLAINTIFFS' FURTHER REPLY IN SUPPORT OF THEIR
### MOTION FOR TEMPORARY RESTRAINING ORDER

This Court has asked the parties to be prepared to address the standard for obtaining temporary injunctive relief, as set out in *Winter v. NRDC*, 555 U.S. 7 (2008), and *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151 (1st Cir. 2004) (Dkt. # 88).  Both of those decisions confirm that Optum, Inc. and Optum Services, Inc. (together, "Optum") are entitled to a TRO because they are certain to suffer irreparable harm and because they have no adequate remedy at law for such harm.

In *Winter*, the U.S. Supreme Court confirmed that a plaintiff seeking a preliminary injunction must show a likelihood of success on the merits, a likelihood that it will suffer irreparable harm in the absence of an injunction, that the balance of equities tips in its favor, and that the injunction is in the public interest.  555 U.S. at 20.  As explained in Optum's briefing to date, Optum's request for a TRO clears that bar by some margin.  Smith argues in response that Optum's assertions of irreparable harm are purely speculative; he is wrong and the decisions in *Winter* and *Charlesbank* confirm that.

In *Winter*, a group of environmental plaintiffs challenged the U.S. Navy's sonar-training exercises, alleging that the Navy had not adequately examined whether the exercises would harm

marine mammals and alleging that harm to marine mammals would injure the plaintiffs' scientific, recreational, and ecological interests. Plaintiffs sought a preliminary injunction halting the sonar exercises and the lower courts enjoined certain aspects of those exercises. 555 U.S. at 16-18. In vacating the preliminary injunction, the Supreme Court took as a given (without deciding) that the plaintiffs had established a likelihood of success on the merits of their substantive claims—but held that an injunction was unwarranted because the plaintiffs had not demonstrated that irreparable injury to them was likely in the absence of an injunction. 555 U.S. at 21-22. Applying the lessons of *Winter* to this case, it is clear that the opposite is true here.

In affirming the preliminarily injunction in *Winter*, the Ninth Circuit had held that it was sufficient for the plaintiffs to establish the "possibility" of irreparable harm absent an injunction. 555 U.S. at 22. The Supreme Court rejected that standard, reiterating that a plaintiff must show that irreparable harm is *likely*, not merely possible, and finding that the plaintiffs had not met that burden because it was speculative whether the activities the plaintiffs sought to enjoin would in fact injure marine mammals—let alone injure plaintiffs themselves. *See id.* at 21 (noting evidence that there were literally no documented cases of injury to marine mammals from the sonar exercises in the relevant geographic area).

Applying the holding and reasoning of *Winter* to this case demonstrates that a TRO is warranted. Assuming that Optum has established a likelihood of success on the merits (like the plaintiffs in *Winter*), it is *certain* that the activities Optum seeks to enjoin would irreparably injure Optum (unlike the plaintiffs in *Winter*). Optum seeks to enjoin Smith from sharing Optum's trade secrets with ABC and from violating the noncompete agreement Smith signed. It is well established that "a breach of non-compete agreements tied to trade secrets concerns triggers a finding of irreparable harm." *Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 130 (D. Mass. 2011). This Court has recognized that "[t]he use and disclosure of [an employer's]

confidential information is, in itself, an irreparable harm." *Bos. Sci. Corp. v. Lee*, No. CIV.A. 13-13156-DJC, 2014 WL 1946687, at *6 (D. Mass. May 14, 2014) (citing *Aspect*).  The reason for that is straightforward: "once the trade secret is lost, it is gone forever." *TouchPoint Sols., Inc. v. Eastman Kodak Co.*, 345 F. Supp. 2d 23, 32 (D. Mass. 2004) (quoting *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984)).

If this Court agrees that Optum has established a likelihood of success on the merits of its breach-of-contract or trade-secret-misappropriation claims, it should therefore find that Optum has established a likelihood that it will suffer irreparable injury absent a preliminary injunction.  If Smith discloses Optum's trade secrets to ABC—whether by sharing confidential documents or by using his inside knowledge of Optum's strategic plans—the harm to Optum is *certain* (not merely likely) and irreparable.  Once Smith shares Optum's trade secrets with ABC (wittingly or unwittingly), they cannot be unshared.  Indeed, that is precisely why Optum uses noncompete agreements:  once an employee like Smith who engages in high-level strategic planning has access to a company's market strategies and trade secrets, he cannot *unlearn* what he has learned when he goes to work for a competitor.  ABC hired Smith to develop new products and services that will compete with Optum's (indeed, that are intended to compete directly for some of Optum's customers); in performing that role, Smith cannot avoid using the inside information he acquired at Optum.  The use of that information to help a competitor is certain to harm Optum.

The First Circuit's decision in *Charlesbank* further confirms that Optum has established a likelihood of irreparable harm absent an injunction.  The court in that case confirmed that an injunction is unwarranted where ordinary remedies at law are sufficient to compensate a plaintiff for any injury.  370 F.3d at 161-163.  In that case, the plaintiff sought monetary damages, the paradigmatic legal remedy.  The court rejected the plaintiff's argument that preliminary

injunctive relief was warranted because without it the defendant may not have sufficient funds to pay a future judgment—in part because that is a common feature of claims for money damages and in part because the plaintiff already had a security interest in all of the defendant's property. *Id.* at 162-163.  None of the features of *Charlesbank* is present in this case.  Optum seeks to *prevent* irreparable harm by *preventing* Smith from sharing Optum's trade secrets in violation of his noncompete agreement and trade-secret-misappropriation laws—it is not seeking through this injunction to preserve its ability to collect a money judgment from Smith for a breach that has already occurred.  Nor would it—because, as explained, the harm that flows from an unauthorized disclosure of trade secrets cannot be repaired fully through money damages.  The information Smith misappropriated is now in his head; it is integrated into his thinking about this corner of the market.  It will not be possible after the fact to establish exactly which aspects of which new products and services stemmed from misappropriated trade secrets—which is precisely why Optum seeks now to prevent the disclosure of those secrets.

Optum has spent years developing its products, services, and market strategies.  If Smith shares that information with a competitor, all of the competitive advantage Optum has toiled to build will be wiped out.  Significantly, that harm would occur *now* even if ABC does not bring a competing product to market for another year (or longer).  Smith's sharing of inside information (which, to reiterate, he cannot avoid doing if he works for ABC because his own knowledge of the market is informed by that inside information) will begin *now* to shape the development of competing products and services and will inevitably speed those products and services to market.  That is an immediate competitive harm to Optum.

Smith's primary argument in response is that it is speculative whether he will actually violate his non-compete agreement, whether he has misappropriated trade secrets, and whether ABC is in fact a competitor.  But that is an argument about whether Optum is likely to succeed

on the merits, not an argument about whether—assuming Optum is likely to succeed on the merits—it is also likely to suffer irreparable harm as a result of Smith's actions. Optum has briefed at length the wealth of evidence supporting the likelihood that it will succeed on the merits and will not repeat those points here. The point of *Winter* and *Charlesbank* is that, in addition to a likelihood of success, a plaintiff seeking preliminary injunctive relief must also show a likelihood of irreparable harm that is more than speculative. Here, Optum has done just that—it has shown that, assuming that Smith has taken its trade secrets to a competitor, and absent a TRO, it stands to lose its trade secrets, the disclosure and/or use of which, once effected, cannot be undone.

                                                          Respectfully submitted,

                                                          OPTUM, INC. and
                                                          OPTUM SERVICES, INC.,

                                                         By their attorneys,

                                                         */s/ Stephen D. Riden*
                                                         Russell Beck, BBO No. 561031
                                                         Stephen D. Riden, BBO No. 644451
                                                         Hannah Joseph, BBO No. 688132
                                                         Beck Reed Riden LLP
                                                         155 Federal Street, Suite 1302
                                                         Boston, Massachusetts  02110
                                                         617.500.8660 Telephone
                                                         617.500.8665 Facsimile
                                                         *rbeck@beckreed.com*
                                                         *sriden@beckreed.com*
                                                         *hjoseph@beckreed.com*

Dated:  February 20, 2019

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document has been filed through the CM/ECF system on February 20, 2019, and will be served electronically to the registered participants as identified on the Notice of Electronic Filing through the Court's transmission facilities, and that non-registered participants have been served this day by mail.

                                                     */s/ Stephen D. Riden*